COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Fitzpatrick, Judges Benton, Willis, Elder,
          Bray, Annunziata, Bumgardner, Frank, Humphreys,
          Clements and Agee
Argued at Richmond, Virginia


F.E.
                                          OPINION BY
v.   Record No. 1106-99-2          JUDGE LARRY G. ELDER
                                        JUNE 26, 2001
G.F.M.

                  UPON A REHEARING EN BANC

        FROM THE CIRCUIT COURT OF THE CITY OF CHARLOTTESVILLE
                Joseph F. Spinella, Judge Designate

          Patricia M. Brady (K. Scott Miles; Alex R.
          Gulotta; American Civil Liberties Union of
          Virginia Foundation;
          Charlottesville-Albemarle Legal Aid Society,
          on brief), for appellant.

          John E. Davidson (Bruce M. Steen; McGuire
          Woods LLP, on brief), for appellee.


     F.E. (father) appeals from the dismissal of his challenge

to the adoption of his son, J.B., by the child's maternal

grandmother, G.F.M. (grandmother).  The trial court granted

grandmother's demurrer on the ground that the challenge was

untimely under Code § 63.1-237, which requires that such

challenges be made within six months following entry of the

final order of adoption, even if fraud or lack of notice to or

personal jurisdiction over any person is shown.[1]  On appeal,

---

     [1] Code § 63.1-237 has been repealed and recodified at
§ 63.1-219.23.  See 2000 Va. Acts ch. 830 (repealing and

father contends (1) application of the statute's six-month limitation period violated his due process and equal protection rights under the facts of this case, which include his allegations that grandmother committed extrinsic and intrinsic fraud such that father never received notice of the proceedings and the court never obtained personal jurisdiction over father; and (2) the circuit court erroneously failed to appoint a guardian ad litem and to consider the issue of visitation. A panel of this Court, with one judge dissenting, held the statute unconstitutional as applied in this case and reversed the ruling of the trial court. See 32 Va. App. 846, 531 S.E.2d 50 (2000). We granted grandmother's petition for rehearing en banc and stayed the mandate of that decision.

On rehearing en banc, we hold that application of the time limitation imposed in Code § 63.1-237 was unconstitutional under the facts alleged in father's petition and, therefore, that the circuit court erroneously granted grandmother's demurrer. We also hold the trial court did not err in refusing to act on father's request for visitation and appointment of a guardian ad litem for J.B. because, unless and until the adoption order is set aside, father lacks standing to make such requests. We

---

recodifying adoption statutes at §§ 63.1-219.7 to 63.1-219.55).
The text of the provision has not changed.
    All other citations to adoption statutes considered in this
opinion are to the statutory scheme applicable at the time of
entry of the adoption order in this case.

reverse the ruling of the trial court granting the demurrer, vacate its order of dismissal, and remand for further proceedings consistent with this opinion.

I.

BACKGROUND

Because this case involves the granting of a demurrer, we accept as true, for purposes of reviewing this motion only, all facts alleged in the petition.[2]  See Code § 8.01-273; Runion v. Helvestine, 256 Va. 1, 7, 501 S.E.2d 411, 415 (1998).  "A demurrer admits the truth of all material facts properly pleaded.  Under this rule, the facts admitted are those expressly alleged, those which fairly can be viewed as impliedly alleged, and those which may be fairly and justly inferred from the facts alleged."  Rosillo v. Winters, 235 Va. 268, 270, 367 S.E.2d 717, 717 (1988).

In late September 1995, father, his approximately fourteen-month-old son, J.B., and the child's biological mother, C.B., were involved in an automobile accident in which C.B. was killed and J.B. was seriously injured.  For ten months prior to the accident, father, C.B. and J.B. resided together.  J.B. had "spent the majority of his life in [the] home" shared by father and C.B.  That "household did not include [grandmother G.F.M.],"

_____

[2] In subsequent stages of the proceedings, however, the court, as the finder of fact, remains free to review the evidence independently and to conclude that it does not support the allegations in the complaint or petition.

C.B.'s mother.  The record does not reveal where J.B. and C.B. resided for the first four months of J.B.'s life.

Following the accident, J.B. was hospitalized, and father "stayed at his side . . . for several weeks."  It was father's understanding that J.B. would require constant medical care following his release from the hospital, and father and grandmother agreed that grandmother would care for J.B. in her home following his release from the hospital.

At the time of the accident, father, a native Spanish speaker, could not read English.  After C.B.'s death, father relied on grandmother for assistance in completing paperwork. On October 12, 1995, at grandmother's request, father signed a "Consent to Adoption" form by which he purported to consent to grandmother's adopting J.B.  The caption on the form read "In the matter of an adoption of a child known as [J.B.] . . . by [G.F.M., grandmother]."  Father signed the consent in grandmother's lawyer's office, in the presence of a notary but without counsel or an interpreter.  Father was not aware of the content of the form he signed and relied on grandmother's representations that his execution of the form "was merely to allow [grandmother] to have access to medical information and accompany [J.B.] to appointments."

After father signed the "Consent to Adoption" form, grandmother petitioned the circuit court to adopt her grandson, J.B., including with her petition the form executed by father.

In her petition, she falsely represented that J.B. had lived in her home "continuously for his whole life" and that J.B.'s mother, C.B., also had resided with grandmother until the time of her death. The court ruled that, pursuant to Code § 63.1-223(E), it was "proper to proceed without the investigations and report required by Section 63.1-223," and by order entered October 24, 1995, it decreed J.B. the adopted child of grandmother.

Other than father's execution of the consent to adoption form, which he could not read, father received no notice of the adoption. He was not served with a copy of the petition or the final order. The order was entered against his wishes.

Following C.B.'s death and J.B.'s release from the hospital, J.B. resided primarily with grandmother, but both before and after entry of the adoption order, father "[saw] and care[d] for [J.B.] several times per week, including overnight visits in [father's] home on weekends."

In February 1997, father married in a ceremony held in grandmother's home. Father and his new wife "continued the established pattern of frequent and prolonged visitation with [J.B.] in their home and [grandmother's] home. Some of these visits lasted for two weeks or more, and at least one included a trip out of state."

In February 1998, father and his new wife informed grandmother that they wished to have J.B. live in their

household. At that time, grandmother informed father that she had adopted J.B. in October 1995. Grandmother has prevented father from having any additional contact with J.B. since that time and has served father and his wife with trespassing notices to prevent them from coming to her home to see J.B.

On September 24, 1998, father filed a petition to set aside the adoption order, claiming grandmother committed extrinsic and intrinsic fraud, and that application of the six-month statute of limitation to prevent a challenge "based on lack of personal jurisdiction, lack of notice, duress, and fraud" violated his due process and equal protection rights. He sought to have the statute declared unconstitutional as applied to him, to have the adoption order declared void, and to be awarded regular visitation with his son until his parental rights were restored. He also sought appointment of a guardian ad litem for his son.

Grandmother filed a demurrer, asserting that the statute was constitutional and barred father from seeking relief. She also contended that father lacked standing to request visitation.

The trial court held that the petition and consent for adoption provided it with jurisdiction under Code § 63.1-220.3(C)(6) to enter the final adoption order. With the passage of more than six months time following that entry, the court held that Code § 63.1-237 prevented father from attacking the order. It stated expressly, "The court does not see the

need to pass upon the constitutionality of the statute," and it did not do so, despite father's repeated requests for consideration of this issue. It also said, "I see nothing . . . preventing the birth father and his wife [from] fil[ing] a petition for the adoption of his birth-son who is now legally the child of the grandparents. It may well be that the best interests of the child would govern the outcome of that action which may or may not be the same outcome that now exists."

Father filed a motion to reconsider, which the court denied.

II.

ANALYSIS

A.

CONSTITUTIONALITY OF CODE § 63.1-237 AS APPLIED TO FATHER[3]

Extrinsic fraud is fraud which occurs outside the judicial process and "consists of 'conduct which prevents a fair

---

[3] Although Code § 8.01-235 provides that a statute of limitation defense "cannot be set up by demurrer" and may be raised only as an affirmative defense in a responsive pleading, father did not oppose the demurrer on that ground, either in the trial court or on appeal. Thus, Rule 5A:18 prevents our consideration of this claimed error as a basis for reversal on appeal absent a showing of "good cause" or to "attain the ends of justice." If the statute was unconstitutionally applied, avoiding the constitutional issue will not "attain the ends of justice," and any attempt to apply this exception simply begs the constitutional question. Further, the "'good cause' [exception] relates to the reason why an objection was not stated at the time of the ruling," Campbell v. Commonwealth, 14 Va. App. 988, 996, 421 S.E.2d 652, 656 (1992) (en banc) (Barrow, J., concurring), and, thus, it is not applicable under the facts of this case.

submission of the controversy to the court.'"  Peet v. Peet, 16

Va. App. 323, 327, 429 S.E.2d 487, 490 (1993) (quoting Jones v.

Willard, 224 Va. 602, 607, 299 S.E.2d 504, 508 (1983)).  It

includes "'purposely keeping [the unsuccessful party] in

ignorance of the suit . . . .  In all such instances the

unsuccessful party is really prevented, by the fraudulent

contrivance of his adversary, from having a trial . . . .'"

McClung v. Folks, 126 Va. 259, 270, 101 S.E. 345, 348 (1919)

(quoting Pico v. Cohn, 25 P. 970, 971, aff'd on reh'g en banc,

27 P. 537 (Cal. 1891)); see O'Neill v. Cole, 194 Va. 50, 57, 72

S.E.2d 382, 386 (1952) (holding sufficient to state claim of

extrinsic fraud allegations in complaint that father made false

statements to daughter to persuade her not to contest judicial

transfer of her property to him).  Under these circumstances,

"[a] collateral challenge to a judgment . . . is allowed because

---

Even if one of these exceptions might properly be applied
to avoid a constitutional issue, avoidance of the constitutional
issue in the instant appeal would be an exercise in procedural
futility.  The trial court has already ruled that the statute of
limitation bars father's action to set aside the adoption,
despite its duty to view the facts on the demurrer in the light
most favorable to father.  Thus, the only reasonable conclusion
is that, if we were to reverse the dismissal based solely on
grandmother's failure to raise the statute of limitation in the
proper pleading, grandmother would plead the statute as an
affirmative defense in her responsive pleading and the trial
court would rule in grandmother's favor without hearing
evidence, based on the trial court's already demonstrated belief
that the statute of limitation applies to bar father's petition
under any version of the facts.
    Thus, our passing on the constitutionality of Code
§ 63.1-237 as applied to father in this case is appropriate.

such fraud perverts the judicial processes and prevents the court or non-defrauding party from discovering the fraud through the regular adversarial process."  Peet, 16 Va. App. at 327, 429 S.E.2d at 490.  Extrinsic fraud, therefore, is "'fraud that . . . deprives a person of the opportunity to be heard.'"  Hagy v. Pruitt, 529 S.E.2d 714, 717 (S.C. 2000) (quoting Hilton Head Center of S.C., Inc. v. Pub. Serv. Comm'n, 362 S.E.2d 176, 177 (S.C. 1987)).

Code § 63.1-237 purports to restrict a party's ability to bring a collateral action asserting extrinsic fraud in order to set aside an adoption.  Code § 63.1-237 provides as follows:

> After the expiration of six months from the date of entry of any final order of adoption from which no appeal has been taken to the Court of Appeals, the validity thereof shall not be subject to attack in any proceedings, collateral or direct, for any reason, including but not limited to fraud, duress, failure to give any required notice, failure of any procedural requirement, or lack of jurisdiction over any person, and such order shall be final for all purposes.

This statute roughly tracks the language of the Revised Uniform Adoption Act, except that the Uniform Act provides for a one-year limitation period.  See Revised Unif. Adoption Act (RUAA) § 15(b) (amended 1971), 9 U.L.A. 203 (1999); see also Uniform Adoption Act § 3-707(d) (1994), 9 U.L.A. 97-98 (providing that, without exception, a decree of adoption "is not subject to a challenge begun more than six months after the

decree or order is issued").  The commentary accompanying the

RUAA "explains that it is designed to impose a very short

statute of limitation" because "'[t]he policy of stability in a

family relationship, particularly when a young minor is

involved, outweighs the possible loss to a person whose rights

are cut off through fraud and ignorance.'"  McKinney v. Ivey,

698 S.W.2d 506, 507 (Ark. 1985) (quoting 9 U.L.A. 48 (1979)).

Father concedes that literal application of the statute

would bar his petition to set aside the adoption.  The adoption

was effected by order entered October 24, 1995; his petition to

set aside was filed on September 24, 1998, well outside the

six-month limitation period.  He contends, however, that

application of Code § 63.1-237's limitation period to bar his

challenge to the validity of the adoption violated his due

process and equal protection rights.  We agree that the statute

is unconstitutional as applied to the facts of this case.

> The due process clauses of the Federal and
> Virginia Constitutions provide that no
> person shall be deprived of life, liberty,
> or property without due process of law.
> All actions of the General Assembly are
> presumed to be constitutional.  Thus, courts
> will declare an enactment unconstitutional
> only when it clearly is repugnant to some
> provision of either the state or federal
> constitution.  The party challenging the
> enactment has the burden of proving its
> unconstitutionality, and if a reasonable
> doubt exists as to its constitutionality,
> the doubt must be resolved in favor of its
> validity.
> Generally, due process is satisfied if
> an enactment has a "reasonable relation to a

> proper purpose and [is] neither arbitrary
> nor discriminatory."  Thus, under the
> general rule, a statute is not violative of
> due process if it withstands a "rational
> basis" test.  When, however, a statute
> affects a fundamental right or a suspect
> classification, its constitutionality will
> be judged by the "strict scrutiny" test.

Hess v. Snyder Hunt Corp., 240 Va. 49, 52-53, 392 S.E.2d 817, 820 (1990) (citations omitted).  When a statute "significantly interferes with the exercise of a fundamental right, it cannot be upheld unless it is supported by sufficiently important state interests and is closely tailored to effectuate only those interests."  Zablocki v. Redhail, 434 U.S. 374, 388, 98 S. Ct. 673, 682, 54 L. Ed. 2d 618 (1978).

On several occasions, the United States Supreme Court has considered a parent's interest in the relationship with his or her child.  See Lehr v. Robertson, 463 U.S. 248, 256-58, 103 S. Ct. 2985, 2990-91, 77 L. Ed. 2d 614 (1983).

> In the vast majority of cases, state law
> determines the final outcome. . . .  In some
> cases, however, this Court has held that the
> Federal Constitution supersedes state law
> and provides even greater protection for
> certain formal family relationships. . . .
> In these cases the court has found that the
> relationship of love and duty in a
> recognized family unit is an interest in
> liberty entitled to constitutional
> protection.  "[S]tate intervention to
> terminate [such a] relationship . . . must
> be accomplished by procedures meeting the
> requisites of the Due Process Clause."

Id. at 256-58, 103 S. Ct. at 2991 (quoting Santosky v. Kramer, 455 U.S. 745, 753, 102 S. Ct. 1388, 1394, 71 L. Ed. 2d 599

(1982)) (emphasis added) (other citations omitted). "'[T]he interest of parents in their relationship with their children is sufficiently fundamental to come within the finite class of liberty interests protected by [the Due Process Clause of] the Fourteenth Amendment.'" M.L.B. v. S.L.J., 519 U.S. 102, 119, 117 S. Ct. 555, 565, 136 L. Ed. 2d 473 (1996) (quoting Santosky, 455 U.S. at 774, 102 S. Ct. at 1405 (Rehnquist, J., dissenting) (noting that Court was unanimously of Rehnquist's view on this point)) (emphasis added).

The Court also has examined "the extent to which the Constitution affords protection to the relationship between natural parents and children born out of wedlock." Lehr, 463 U.S. at 258, 103 S. Ct. at 2991. The Court has drawn a clear distinction between "a mere biological relationship and an actual relationship of parental responsibility." Id. at 259-60, 103 S. Ct. at 2992.

> The difference between the developed parent-child relationship . . . and the potential relationship . . . is both clear and significant. When an unwed father demonstrates a full commitment to the responsibilities of parenthood by "com[ing] forward to participate in the rearing of his child," his interest in personal contact with his child acquires substantial protection under the Due Process Clause. At that point it may be said that he "act[s] as a father toward his children." . . . [T]he mere existence of a biological link does not merit equivalent constitutional protection.

<u>Id.</u> at 261, 103 S. Ct. at 2993 (quoting <u>Caban v. Mohammed</u>, 441 U.S. 380, 389 n.7, 392, 99 S. Ct. 1760, 1766 n.7, 1768, 60 L. Ed. 2d 297 (1979)). Therefore, a biological parent who participates in the rearing of his or her child has a fundamental right to continue to participate in that relationship unless the relationship is altered or terminated by due process of law. See <u>id.</u>; <u>see</u> <u>also</u> <u>McKinney</u>, 698 S.W.2d at 508; <u>Wade v. Geren</u>, 743 P.2d 1070, 1073-74 (Okla. 1987) (affirming trial court's ruling that father who had established relationship with child had due process right to notice of grandparents' adoption petition and that grandparents' failure to disclose father's identity and pending paternity action constituted fraud which rendered the adoption decree void).

In father's case, based on the facts alleged in his petition to set aside the adoption, father had a fundamental right not to have his already-established relationship with his biological child terminated without due process.[4] Because the limitation period contained in Code § 63.1-237 affected father's

---

[4] The dissent concludes that the dispute between father and grandmother is over <u>custody</u> of the child and that "[n]othing in this record suggests that the adoptive mother [grandmother] has custody based on a decree that would put the father at a disadvantage . . . ." This mistakes the effect of the order of adoption under Virginia law. Pursuant to the statutory scheme applicable to these proceedings, <u>see</u> Code § 63.1-233 (Repl. Vol. 1995) (repealed and recodified as amended at § 63.1-219.22), the final order of adoption, in fact, "divested [father] of all legal rights and obligations in respect to the child" because father was not "the husband or wife of . . . [petitioner grandmother]." Thus, entry of the order of adoption terminated father's parental rights, and father has no legal justification for seeking custody of his biological child.

fundamental right to maintain that relationship with his son, we evaluate its constitutionality, as applied to the facts of this case, under the "strict scrutiny" test. See Hess, 240 Va. at 52-53, 392 S.E.2d at 820. The statute "significantly interferes with the exercise of a fundamental right," and "it cannot be upheld unless it is supported by sufficiently important state interests and is closely tailored to effectuate only those interests." Zablocki, 434 U.S. at 388, 98 S. Ct. at 682.

We agree that the state has a compelling interest in "'[preserving] stability in a family relationship, particularly when a young minor is involved.'" McKinney, 698 S.W.2d at 507. We disagree, however, that application of the six-month statute of limitation under the facts of this case is sufficiently narrowly tailored to achieve the goal of stability while simultaneously preserving father's fundamental right to continue the pre-existing relationship with his biological child. The facts alleged in father's petition to set aside the adoption, if taken as true, confirm the existence of this relationship. The petition alleges that the child resided with his mother and father for ten months prior to being injured in a car accident at fourteen months of age. Father remained at his child's bedside throughout the course of his hospitalization. Although father and grandmother agreed that grandmother would take care of the child upon his release from the hospital because he would require constant attention due to his injuries, father did not

abandon his relationship with his son.  To the contrary, the child routinely resided with father overnight on the weekends, and father "[saw] and care[d] for" the child during the week, as well.  When father married about one and one-half years later, he and his new wife "continued the established pattern of frequent and prolonged visitation with [J.B.] in their home and [grandmother's] home.  Some of these visits lasted for two weeks or more, and at least one included a trip out of state."  Under the facts alleged, father was no stranger to his child.  Therefore, allowing father to attack the order of adoption more than six months after its entry based on grandmother's alleged extrinsic fraud would not have jeopardized the state's compelling interest in maintaining the stability of the family relationship.  Grandmother's refusal to allow father any contact with the child likely has been more disruptive than an order setting aside the adoption would have been.

Furthermore, the facts alleged, if taken as true, also establish that grandmother's extrinsic fraud resulted in a lack of notice to and personal jurisdiction over father.  Although the court may have believed it acquired personal jurisdiction based on father's execution of the Consent to Adoption form, the acquisition of personal jurisdiction is based on the receipt of notice which complies with the Due Process Clause.  See Price v. Price, 17 Va. App. 105, 112, 435 S.E.2d 652, 657 (1993) (citing Kulko v. Superior Ct., 436 U.S. 84, 91, 98 S. Ct. 1690, 1696, 56

L. Ed. 2d 132 (1978)).  Due process requires "'notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'"  Armstrong v. Manzo, 380 U.S. 545, 550, 85 S. Ct. 1187, 1190, 14 L. Ed. 2d 62 (1965) (quoting Mullane v. Central Hanover Trust Co., 339 U.S. 306, 314, 70 S. Ct. 652, 657, 94 L. Ed. 2d 865 (1950)).  In this case, like in Armstrong, father "did not have . . . the slightest inkling of the pendency of [the] adoption proceedings."  Id. at 548, 85 S. Ct. at 1189; see also Phariss v. Welshans, 946 P.2d 1160, 1163 (Or. Ct. App. 1997) (holding under Armstrong that statute of limitation was unconstitutional as applied where natural mother and adoptive father failed to exercise reasonable diligence to serve natural father); In re Knipper, 507 N.E.2d 436, 438 (Ohio Ct. App. 1986) (applying Armstrong where child's grandparents failed to exercise reasonable diligence to serve natural mother).

We assume without deciding that father's execution of the Consent to Adoption form, filed by grandmother along with the petition for adoption, constituted an appearance before the court sufficient to permit the court to infer father's receipt of notice and submission to the jurisdiction of the court.[5]

---

[5] Code § 63.1-220.3, subsections (A) to (C), outline the general hearing, notice and consent requirements for adoption. Code § 63.1-220.3(C)(6) provides that in certain intra-familial adoptions, including those in which the prospective adoptive

Nevertheless, father's petition to set aside alleged that he had no understanding of the content of the form and relied on the representations of grandmother -- who could reasonably have been expected to know of the language barrier -- that the Consent to Adoption form was merely to facilitate her oversight of the child's medical care. Under these circumstances, grandmother's alleged actions constituted extrinsic fraud, and execution of the form was not "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Once the court became aware of these allegations, it had a duty to evaluate the adequacy of the notice and

---

parent is the child's grandparent, consent may be written and acknowledged and no hearing to confirm consent is required, but it does not specifically state whether the petition for adoption must be served on a parent who has already executed consent. Compare In re Anderson, 589 P.2d 957, 959 (Idaho 1978) (noting legislature has provided that execution of consent to adopt also serves as general appearance in court where adoption petition is filed), overruled on other grounds, In re Steve B.D., 723 P.2d 829, 834 (Idaho 1986), and In re Adoption of Minor Child, 287 A.2d 115, 122 & n.5 (R.I. 1972) (construing absence of statutory notice requirement to mean that parent who executes consent to adoption is not entitled to additional notice of adoption proceedings), with McCulley v. Bone, 979 P.2d 779, 792 n.16 (Or. Ct. App. 1999) (noting that biological parents are indispensable parties to adoption proceeding; that under Oregon's present statutory scheme, parents' written consent to adoption does not obviate need for formal notice to parents of filing of petition; and that requiring notice is more sensible approach where statute permits revocation of consent because, under former statutory scheme, absence of separate notice requirement "frustrated the parents' . . . ability to revoke that consent").

jurisdiction.[6]  See In re Rabatin, 615 N.E.2d 1099, 1102 (Ohio

Ct. App. 1992) (holding that mother was "presumed to have had

actual notice of the adoption, and to have effectively waived

the notice requirement" where she signed a consent to adoption

form and the record contained no evidence that she was "unable

to read or otherwise could not understand the consent form she

signed").

---

[6] The dissent mischaracterizes this passage as containing
our assumption that the consent executed by father "constituted
an appearance before the court" and contends that we "forget[]
that personal jurisdiction . . . is acquired by appearance and
[that] service of process is not necessary if the party appears
voluntarily."  Contrary to the dissenters' representations,
however, we assume only that the court was entitled initially to
infer that father made an appearance based on grandmother's
submission of the consent form.  Father's filing of the petition
to set aside the adoption due to grandmother's alleged extrinsic
fraud imposed upon the court a duty to determine whether
father's appearance via the consent form was, in fact, a
voluntary appearance sufficient to allow the court to obtain
personal jurisdiction over father.  Under our analysis, the
dissenters' statement that service of process is not necessary
if the party appears voluntarily merely begs the question.
     Further, the dissenters' claim that our decision "subjects
any existing adoption grounded on consent but entered without
service of process upon the consenting party to perpetual
[jurisdictional] challenge" is incorrect.  (Emphasis added).
Our holding is expressly limited to the facts alleged in this
case, in which (1) the biological father had an established
relationship with his child; (2) the nature of the father's
relationship with the child did not change until after the
statute of limitation had run; and (3) the father had no
understanding of the content of the consent to adoption form due
to a language barrier and relied on the representations of
grandmother that the consent form was merely to facilitate her
oversight of the child's medical care.  The goal of protecting
the finality of adoptions, though admirable, does not justify
the wholesale disregard of a parent's constitutional right to
due process under these limited circumstances.

Assuming without deciding that father had a duty to act diligently to preserve his rights, no evidence indicates he failed to do so. Cf. Drummond v. Drummond, 945 P.2d 457, 462 (N.M. Ct. App. 1997) (in applying equitable estoppel to hold that adopting grandparents could not assert statute of limitation defense to bar mother's challenge to adoption, noting that no evidence showed mother did not act diligently in failing to challenge adoption earlier because "there was never a change of living circumstances until after the statute of limitations had run"). He was unable to read English and reasonably relied on grandmother's fraudulent representations that the purpose of the "Consent to Adoption" form was merely to allow grandmother access to the child's medical records since she would be assuming primary responsibility for the child's medical care. Until grandmother told father of the adoption over two years later, father had no reason to know that his parental rights had been terminated. See, e.g., STB Marketing Corp. v. Zolfaghari, 240 Va. 140, 145, 393 S.E.2d 394, 397 (1990) (construing due diligence standard as the "'measure of prudence . . . expected from . . . a reasonable and prudent man under the particular circumstances . . . depending on the relative facts of the special case" (quoting Black's Law Dictionary 411 (5th ed. 1979)) (emphasis added). Father and grandmother both continued to care for the child as they had agreed to do prior to the adoption, and no substantive changes occurred in the

relationship.  Cf. Drummond, 945 P.2d at 462.  Grandmother's fraud in misrepresenting to father the effect of the Consent to Adoption form and in misrepresenting to the court the parties' living arrangements prior to the adoption constituted extrinsic fraud sufficient to require the denial of grandmother's demurrer.  See Hagy, 529 S.E.2d at 717 (holding that statute of limitation cannot be constitutionally construed to prevent court from setting aside a judgment for extrinsic fraud because doing so amounts to an impermissible legislative restriction "on the judicial branch's exercise of its inherent authority").  But see Phariss, 946 P.2d at 1162-63 (rejecting similar separation-of-powers argument where adoptive parents allegedly failed to use reasonable diligence to serve natural father with notice of adoption proceedings but ultimately setting aside adoption based on due process violation).

We reject grandmother's argument that the statute is subject to two interpretations, one which is constitutional and another which is not, and should be construed to impose a discovery requirement, thereby barring father's claim of fraud because he did not file his petition to set aside until more than six months after he admitted learning of the fraud. Although a statute containing a discovery trigger likely would be sufficiently narrowly tailored to pass constitutional muster, nothing in Code § 63.1-237 implies that the statute of limitation is to begin running on the date on which the fraud

was or should have been discovered.  Rather, the statute expressly refers to the "expiration of six months from the date of entry of any final order of adoption from which no appeal has been taken."  Code § 63.1-237.  The General Assembly was free to create a discovery rule when it drafted the statute, but it did not do so.  See Stewart v. Rouse, 469 S.W.2d 615, 616 (Tex. Civ. App. 1971), aff'd in part and rev'd in part on other grounds, 475 S.W.2d 574, 574-75 (Tex. 1972) (noting legislature acted in wake of Armstrong to protect "integrity and stability in the adoption process" by creating discovery rule barring petition to vacate adoption decree based on lack of notice "'if more than one year has elapsed since [natural parent] discovered or should have discovered the adoption was decreed'").  Absent such language in the statute, father lacked even constructive notice that such a limitation might be applied once he became aware of the fraud.  Thus, without express statutory language imposing a discovery trigger, such an interpretation is not available to save the statute from unconstitutional application here.[7]

---

[7] The interpretation grandmother urges is not simply a permissible narrowing of a statute which otherwise would be unconstitutionally overbroad.  See Va. Soc. for Human Life, Inc. v. Caldwell, 256 Va. 151, 500 S.E.2d 814 (1998) (holding in free speech case that no ambiguity is required to authorize court to construe statute more narrowly to save it from unconstitutionality).  Construing Code § 63.1-237 to impose a discovery requirement would actually serve to rewrite the statute to impose an additional requirement to bar claims in a way which could not reasonably have been foreseen by those to whom it purportedly applies.  Here, by the time father became aware of grandmother's alleged fraud, the statute's express

Assuming without deciding that some limitation must apply, but

see Parrish v. Jessee, 250 Va. 514, 521, S.E.2d 141, 145 (1995)

(noting that extrinsic fraud results in judgment which is void

ab initio and may be attacked in any court at any time), it

should be either the general statute of limitation for fraud,

which provides two years from the date of discovery, see Code

§§ 8.01-248, 8.01-249, or the doctrine of laches, see Hagy, 529

S.E.2d at 717 n.7.  Under either approach, a lapse of seven

months from the date of discovery, under the facts of this case

as alleged in the petition, is insufficient to bar the attack.

In summary, we hold, in regard only to grandmother's

demurrer, that application of the six-month statute of

limitation to father was unconstitutional and that the adoption

decree was void ab initio based on grandmother's alleged fraud

and the resulting lack of notice to and personal jurisdiction

over father.  Therefore, the trial court erroneously granted

grandmother's demurrer.

B.

VISITATION AND APPOINTMENT OF A GUARDIAN AD LITEM

Father also contests the trial court's refusal to grant him

visitation and to appoint a guardian ad litem.  We hold,

however, that father lacked standing to make such a request as

---

limitation period had already expired, and the statute may not
reasonably be interpreted to alert father to a new statute of
limitation expiring six months from the date of his discovery.

long as the order of adoption remains in effect; thus, we hold the trial court did not err in failing to grant visitation. Code § 20-124.1 provides that only a person "with a legitimate interest" has standing to request custody or visitation and that "[a] party with a legitimate interest . . . shall not include any person . . . whose parental rights have been terminated by court order, either voluntarily or involuntarily." See also Code § 63.1-233 (providing that final order of adoption divests birth parents of right to petition for visitation). Therefore, father will not have standing to request visitation unless or until the trial court rules in his favor on the merits by setting aside the adoption order.[8]  For these same reasons, the court had no duty to act on father's request for the appointment of a guardian ad litem.

---

[8] Contrary to the statement of the trial court in its letter opinion, this lack of standing would also prevent father from having any meaningful ability to petition to adopt J.B.  See Code § 63.1-233 (providing that final order of adoption divests birth parents "of all legal rights and obligations in respect to the child"); Stanley v. Illinois, 405 U.S. 645, 647-48, 92 S. Ct. 1208, 1211, 31 L. Ed. 2d 551 (1972) (noting that equal protection violation resulting from Illinois statute providing for automatic termination of parental rights of unwed father on death of mother was not remedied by fact that father had right to petition for adoption of children because Illinois law considered him "a stranger to his children," provided him "no priority in adoption proceedings," and required him "to establish not only that he would be a suitable parent but also that he would be the most suitable of all who might want custody of the children").

III.

CONCLUSION

For these reasons, we reverse the decision of the trial court, vacate its order dismissing father's petition, and remand for further proceedings consistent with this opinion.

Reversed, vacated and remanded.

Benton, J., with whom Annunziata and Clements, JJ., join,
 concurring.

    I concur in the majority opinion's holding that the

application of the statutory time limitation was

unconstitutional under the facts alleged in the father's

petition, which we accept to be true for purposes of reviewing

the trial judge's grant of the demurrer.  I would also hold,

however, that the former Adoption Act required notice to the

father and that the adoption order is void because the

proceeding was conducted without either notice to the father or

a waiver of notice.  Because of the lack of notice, the adoption

order was entered in violation of the Act and the due process

clauses of the Virginia and United States Constitutions.

                              I.

                             (A)

    The record unequivocally establishes that the father did

not waive notice and did not receive notice of the pending

adoption proceeding.  In unambiguous language, former Code

§ 63.1-225(A) provides that "[n]o petition for adoption shall be

granted, except as hereinafter provided in this section, unless

written consent to the proposed adoption is filed with the

petition."  No statutory exception applies to this case.  In

pertinent part, former Code § 63.1-220.3 provides as follows:

A.  The birth parent or legal guardian of a child may place his child for adoption directly with the adoptive parents of his choice.  Consent to the proposed adoption shall be executed upon compliance with the provisions of this section before a juvenile and domestic relations district court of competent jurisdiction . . . .

*    *    *    *    *    *    *

C.  1. a.  The execution of consent before the court as set forth in subsection A shall not be required of a birth father who is not married to the mother of the child at the time of the child's conception or birth if . . . the birth father consents under oath and in writing to the adoption; . . . .

b.  The court may accept the written consent of the birth father who is not married to the birth mother of the child at the time of the child's conception or birth, provided that the identifying information required in subsection B 3 is filed in writing with the court of jurisdiction.  Such consent shall be executed after the birth of the child, shall advise the birth father of his opportunity for legal representation, and shall be presented to the court for acceptance.  The consent may waive further notice of the adoption proceedings and shall contain the name, address and telephone number of the birth father's legal counsel or an acknowledgement that he was informed of his opportunity to be represented by legal counsel and declined such representation.

c.  In the event that the birth mother's consent is not executed in court in accordance with subsection A, the consent of the birth father who is not married to the birth mother of the child shall be executed in court.

*    *    *    *    *    *    *

6.  When a child has been placed by the
birth parent(s) with prospective adoptive
parents who are the child's grandparents,
adult brother or sister, adult uncle or aunt
or adult great uncle or great aunt, consent
does not have to be executed in court in the
presence of the prospective adoptive
parents.  The court may accept written
consent that has been signed and
acknowledged before an officer authorized by
law to take acknowledgements.  No hearing
shall be required for the court's acceptance
of such consent.

(Emphasis added.)

Former Code § 63.1-225(E) provides as follows:

E.  When a child has been placed by the
birth parent(s) with the prospective
adoptive parent(s) who is the child's
grandparent, adult brother or sister, adult
uncle or aunt, or adult great uncle or great
aunt, the court may accept the written and
signed consent of the birth parent which has
been acknowledged by an officer authorized
by law to take such acknowledgements.

(Emphasis added.)

Although the adoption order does not specify whether the

judge accepted the father's consent pursuant to Code

§§ 63.1-220.3(C)(1)(a) or 63.1-225, the facts alleged in the

father's petition, which the trial judge accepted as true,

establish that the father did not place the child with the

grandmother for the purpose of adoption.  Nevertheless, the

father later signed a "consent" for adoption.  Neither of those

Code sections, however, described or specified the requirements

that were deemed sufficient to constitute a valid consent.  The

only place in the Act that addressed the contents of the consent

was Code § 63.1-220.3(C)(1)(b), where the following was stated:

> <u>Such consent</u> shall be executed after the birth of the child, <u>shall advise the birth father of his opportunity for legal representation</u>, and shall be presented to the court for acceptance.  <u>The consent may waive further notice of the adoption proceedings and shall contain the name, address and telephone number of the birth father's legal counsel or an acknowledgement that he was informed of his opportunity to be represented by legal counsel and declined such representation.</u>

(Emphasis added.)

By explicitly providing that "[t]he consent may waive further notice of the adoption proceeding," <u>id.</u>, the Act implicitly draws a distinction between consent and waiver of notice of the adoption proceeding.  The clear import of the Act is that consent and waiver are not the same concepts.  Moreover, nowhere does the Act indicate, even implicitly, that notice to the father of institution of the adoption proceeding is not required.  Indeed, by providing that the judge may accept a consent that "waive[s] further notice of the adoption proceedings," the Act implicitly recognizes the due process requirement that notice be given of the adoption proceeding. <u>See</u> <u>D.H. Overmyer Co. v. Frick Co.</u>, 405 U.S. 174, 185 (1972) (holding that "due process rights to notice and hearing prior to a civil judgment are subject to waiver").

(B)

Other provisions of the Act support the conclusion that the legislature intended that notice of the adoption proceedings be given to a consenting parent.  For example, the Act makes consent revocable under the following circumstances:

> D.   Consent shall be revocable as follows:
>
> 1.   By either consenting birth parent for any reason for up to fifteen days from its execution.
>
> a.   Such revocation shall be in writing, signed by the revoking party or counsel of record for the revoking party and shall be filed with the clerk of the court in which the petition was filed during the business day of the court, within the time period specified in this section.  If the revocation period expires on a Saturday, Sunday, legal holiday or any day on which the clerk's office is closed as authorized by statute, the revocation period shall be extended to the next day that is not a Saturday, Sunday, legal holiday or other day on which the clerk's office is closed as authorized by statute.
>
> b.   Upon the filing of a valid revocation within the time period set out in this section, the court shall order that any consent given for the purpose of such placement is void and, if necessary, the court shall determine custody of the child as between the birth parents.
>
> 2.   By any party prior to the final order of adoption . . . upon proof of fraud or duress . . . .

Code § 63.1-2203(D).  In a similar vein, the Act also provides as follows:

> Parental consent to an adoption executed
> pursuant to this section shall be revocable
> prior to the final order of adoption . . .
> upon proof of fraud or duress . . . .

Code § 63.1-225(H).

These provisions would be rendered meaningless if notice of the adoption proceeding is not given to a consenting parent. For the statutory right to revoke a consent to have any meaning, the parent who has consented must have notice of the institution of proceedings in order to revoke consent before the adoption takes place. Other courts have reached the same conclusion within a similar statutory framework. See McCulley v. Bone, 979 P.2d 779, 791-92 (1999) (ruling that a parent's right to notice in an adoption proceeding is implicit because it "is sufficiently basic to be constitutionally protected under the Due Process Clause"). Thus, I believe the Act's revocation scheme constitutes an implicit recognition by the legislature that a consenting parent should receive notification of the adoption proceeding.

In addition, the Act also contains express requirements of notice under the circumstances identified in Code §§ 63.1-220.3(C)(1)(a), 63.1-220.3(C)(2) and 63.1-220.3(C)(4). These requirements, which relate to circumstances where a consent is not given, clearly manifest the legislature's awareness of the necessity to satisfy due process requirements.

(C)

The majority "assume[s] without deciding that father's execution of the Consent to Adoption form . . . constituted an appearance before the court sufficient to permit the court to infer father's receipt of notice and submission to the jurisdiction of the court."  I would not make such an assumption.  The father did not sign the "consent" in court. Moreover, the record reflects that the "consent" the father signed did not contain a waiver of notice.  The "Consent" reads as follows:

> I, [the father], over the age of eighteen
> years, parent of [the child], an infant
> under the age of fourteen years do hereby
> consent that said infant be adopted by [the
> grandmother] and that [the grandmother] be
> vested with all the rights, powers and
> privileges with reference to said child as
> are provided by law.

The form does not purport to waive notice.[9]

---

[9] The Uniform Adoption Act of 1994 provides that "[u]nless consent is not required or is dispensed with . . . in a direct placement of a minor for adoption by a parent . . . , a petition to adopt the minor may be granted only if consent to the adoption has been executed by . . . the man . . . who . . . has received the minor into his home and openly held out the minor as his child."  § 2-401(a)(1)(iv).  Significantly, the Act requires that "[a] consent must state:  . . . that the individual who is consenting waives further notice unless the adoption is contested, appealed, or denied."  § 2-406(d)(7) (emphasis added).  Furthermore, although "[a] person entitled to receive notice under this [Act] may waive the notice . . . in a consent . . . or other document signed by the person," § 3-405(a), the Act expressly provides that "[u]nless notice has been waived, notice of a proceeding for adoption of a minor must be served . . . upon an individual whose consent to the adoption

Without either notice to the father or a waiver of notice, the adoption proceeding was not binding on him. He was entitled to challenge it because an order of adoption is void when "personal jurisdiction over [the natural parent] was lacking at the time of the entry of the final order of adoption." Carlton v. Paxton, 14 Va. App. 105, 114, 415 S.E.2d 600, 605 (1992).

For these reasons, I would read the Act to require either notice to the parent or a consent (or other document) that waives notice. Therefore, I would hold that the Act implicitly requires notice to the father in the absence of a waiver of notice. Because the father was not given notice and did not waive notice, the adoption is void.

## II.

The United States Supreme Court has been "unanimously of the view that 'the interest of parents in their relationship with their children is sufficiently fundamental to come within the finite class of liberty interests protected by the Fourteenth Amendment.' . . . [and] also . . . unanimous[ly of

---

is required," § 3-401(a)(1), and served upon "an individual whom the petitioner knows is claiming to be or who is named as the father or possible father of the minor adoptee and whose paternity of the minor has not been judicially determined," § 3-401(a)(3). Only when a consent is executed in substantial compliance with the Act does the parent waive "any right to notice of the proceeding for adoption." § 2-407(a)(3). In the absence of a waiver, "[p]ersonal service of the notice [of a proceeding for adoption of a minor] must be made in a manner appropriate under [the rules of civil procedure for the service of process in a civil action in this State] unless the court otherwise directs." § 3-403(a).

the] view that '[f]ew consequences of judicial action are so grave as the severance of natural family ties.'" M.L.B. v. S.L.J., 519 U.S. 102, 119 (1996) (citations omitted). Noting that "the relationship of love and duty in a recognized family unit is an interest in liberty entitled to constitutional protection," the Supreme Court has held that "'state intervention to terminate [such a] relationship . . . must be accomplished by procedures meeting the requisites of the Due Process Clause.'" Lehr v. Robertson, 463 U.S. 248, 258 (1983) (citations omitted). Moreover, the Supreme Court recognized that "[w]hen an unwed father demonstrates a full commitment to the responsibilities of parenthood by 'com[ing] forward to participate in the rearing of his child,' his interest in personal contact with his child acquires substantial protection under the Due Process Clause." Id. at 261 (citation omitted). When it comes to severing such a protected interest, "[t]he due process concern homes in on the essential fairness of the state-ordered proceedings." M.L.B., 519 U.S. at 120.

Applying these principles, I would hold that former Code § 63.1-237 could not validly preclude the father's challenge to the order because legislation may not abrogate basic due process rights to notice of the institution of proceedings. To read the Act to allow an adoption to proceed either upon a lack of notice to a parent or on a consent by a parent that does not waive notice is to give the Act a sweep that contravenes

constitutional rights.  These fundamental principles have their

genesis in well-settled law.

> It is clear that failure to give the
> petitioner notice of the pending adoption
> proceedings violated the most rudimentary
> demands of due process of law.  "Many
> controversies have raged about the cryptic
> and abstract words of the Due Process Clause
> but there can be no doubt that at a minimum
> they require that deprivation of life,
> liberty or property by adjudication be
> preceded by notice and opportunity for
> hearing appropriate to the nature of the
> case."  "An elementary and fundamental
> requirement of due process in any proceeding
> which is to be accorded finality is notice
> reasonably calculated, under all the
> circumstances, to apprise interested parties
> of the pendency of the action and afford
> them an opportunity to present their
> objections.  Questions frequently arise as
> to the adequacy of a particular form of
> notice in a particular case.  But as to the
> basic requirement of notice itself there can
> be no doubt, where, as here, the result of
> the judicial proceeding was permanently to
> deprive a legitimate parent of all that
> parenthood implies."

Armstrong v. Manzo, 380 U.S. 545, 550 (1965) (citations

omitted).

Long before Armstrong, the Supreme Court of Virginia

applied these same due process principles and ruled as follows:

> The "due process" clauses of the Federal and
> State Constitutions require notice and an
> opportunity to be heard, but the litigants
> have rights which they may waive, if they
> choose, and if waived in a case in which
> they have the right to waive, the judgment
> will be held valid.  In this class of cases,
> the question of the jurisdiction of the
> court usually resolves itself into one of
> whether or not there has been "due process,"

> whether the process has been served in the time and manner required by law, or service has been waived. Of course, the defendant must be properly brought before the court, else there will be no jurisdiction over him and a judgment against him will be void.

Shelton v. Sydnor, 126 Va. 625, 630, 102 S.E. 83, 85 (1920).

Simply put, "'"One of the essentials of due process is notice."'" Walt Robbins, Inc. v. Damon Corp., 232 Va. 43, 47, 348 S.E.2d 223, 226 (1986) (citation omitted).

For these reasons, I would also hold that the adoption order is void.

Bumgardner, J., with whom Frank, Humphreys and Agee, JJ., join, dissenting.

I dissent because the majority unnecessarily decides this appeal too broadly and on constitutional grounds. The implications of this decision will enfeeble adoptions once confidently accepted as final and unassailable. The result counters the established policy of encouraging adoptions and protecting their validity. This appeal does not require the decisional approach of the majority.

In this matter, the father simply appeals the sustaining of a demurrer. He brought his petition under Code § 8.01-428(D), which preserves the common law "independent action" for obtaining equitable relief from a judgment. See Kent Sinclair & Leigh B. Middleditch, Jr., Virginia Civil Procedure § 11.4, at 479 (3d ed. 1998). The elements of that action are well defined and include "'the absence of fault or negligence on the part of the [petitioner].'" Charles v. Precision Tune, Inc., 243 Va. 313, 318, 414 S.E.2d 831, 833 (1992) (citation omitted). The father's fault or negligence in signing a document he could not read is apparent from his pleading. Thus, the petition fails to plead sufficient facts to permit father's action, see id., and a demurrer would be proper because the petition stated no action upon which the father was entitled to relief.

However, that need not be the basis for a decision in this matter. The trial court erred in sustaining a demurrer based on

the statute of limitations of Code § 63.1-237. "[T]he defense that the statutory limitation period has expired cannot be set up by demurrer." Code § 8.01-235. While the father did not raise that objection, preferring his broad constitutional attack, reversal on this narrow basis is preferable to the expansive, constitutional ruling of the majority.

Nonetheless, the majority holds "the adoption decree was void ab initio based on grandmother's alleged fraud and the resulting lack of notice to and personal jurisdiction over the father." It declares the statute of limitations for adoptions unconstitutional as it applied to this father. In reaching this decision, the majority assumes the consent executed by F.E. "constituted an appearance before the court," but yet it concludes the trial court had no personal jurisdiction over him. The majority forgets that personal jurisdiction over a person is acquired by appearance and service of process is not necessary if the party appears voluntarily. W. Hamilton Bryson, Bryson on Virginia Civil Procedure 107 (3d ed. 1997).

Instead, the majority permits extrinsic fraud to nullify the appearance. By concluding misrepresentations prevented personal jurisdiction, the majority makes service of process, the other means of obtaining personal jurisdiction over a party, a requirement. The majority acknowledges appearance by consent but requires service of process. This additional procedural mandate has not been the practice or the requirement. The

General Assembly has consistently provided abridged procedures to simplify adoptions involving the consent of unwed fathers. Before Stanley v. Illinois, 405 U.S. 645 (1972), their consent was not required. See Szemler v. Clements, 214 Va. 639, 202 S.E.2d 880 (1974). After the Supreme Court of the United States extended constitutional protections to unwed fathers' parental rights in Stanley, the General Assembly revised the requirements regarding parental consent. Acts of Assembly 1993 cc. 338, 553. Yet, the General Assembly still incorporated exceptions regarding unwed fathers. They are not required to give their consent in open court, but may consent before a notary upon their sworn statement. Code § 63.1-220.3(C)1.a.

For these reasons, I would reverse the trial court's decision sustaining a demurrer based on the statute of limitations. On remand, the father could amend any defect in his pleading, and the facts surrounding the consent and the three-year delay could be properly addressed in a formal evidentiary hearing. Most importantly, the trial court could address the real issue in this case, the desire of the natural father for custody of his child. The trial court could decide whether it is in the best interests of the child to live with the natural father or the adoptive mother, natural grandmother.[10]

---

[10] Nothing in this record suggests that the adoptive mother has custody based on a decree that would put the father at a disadvantage such as recognized in Armstong v. Manzo, 380 U.S. 545 (1965).

There is no need, at this point, to declare the adoption by the grandmother invalid.

To decide otherwise subjects any existing adoption grounded on consent, but entered without service of process upon the consenting party, to perpetual challenge as to whether the court may have lacked jurisdiction to grant the adoption.