COURT OF APPEALS OF VIRGINIA


Present:  Judges Benton, Willis and Clements
Argued at Richmond, Virginia


SHARON MARIE CROCKETT
                                             OPINION BY
v.    Record No. 1338-01-2      JUDGE JAMES W. BENTON, JR.
                                            MARCH 26, 2002
RONNIE McCRAY AND
 SABRINA McCRAY


          FROM THE CIRCUIT COURT OF PRINCE GEORGE COUNTY
                     James A. Luke, Judge

          Stefan M. Calos for appellant.

          Adrienne George-Eliades (Hill, Rainey &
          Eliades, on brief), for appellees.

          No brief or argument by the child's
          guardian ad litem.


     Sharon Marie Crockett appeals from a final order of adoption

granting the petition of Ronnie and Sabrina McCray to adopt

Crockett's birth daughter.  Crockett contends the trial judge

erred by entering the adoption order because (1) the record failed

to establish that the visitation requirements of Code

§ 63.1-219.19 had been satisfied during the probationary period,

(2) the adoption resulted in the separation of the child from her

blood relatives, (3) the evidence did not rebut the presumption

favoring Crockett, the child's birth parent, (4) the judge failed

to consider all the statutory factors in finding Crockett withheld

her consent to the adoption contrary to the best interest of the

child, (5) the order did not provide for post-adoption visitation between Crockett and the child, and (6) the trial judge refused to appoint a court reporter and provide Crockett, an indigent person, a free transcript.  We agree that the evidence failed to prove the visitations were made as required by Code § 63.1-219.13, and we remand for further proceedings.

I.

The record indicates that in 2000, Ronnie and Sabrina McCray filed a petition in juvenile and domestic relations court seeking approval of Sharon Marie Crockett's consent to the adoption of Crockett's child or, alternatively, a finding that Crockett's refusal to consent was withheld contrary to the child's best interest, and other relief.  By order of July 11, 2000, a judge of the juvenile court found, in pertinent part, that the child was four months old when Crockett placed the child with the McCrays in May 1996; that three months after that placement, a judge of the juvenile court awarded custody of the child to the McCrays; that the child had lived with the McCrays for more than four years; that Crockett appeared at the evidentiary hearing and refused consent; that Crockett was withholding her consent contrary to the best interest of the child; and that all other pertinent statutory requirements had been met.  The judge granted the petition and appointed the McCrays guardians of the child pending her adoption by them.  The record contains no indication that Crockett appealed from that order.

-

On July 6, 2000, the McCrays filed a petition in the circuit court for adoption of the child. The petition for adoption alleged that Crockett placed the child in the care, custody, and control of the McCrays pursuant to former Code § 63.1-220.3, that the juvenile court had made findings that Crockett's consent to adoption had been withheld contrary to the child's best interest, and that the juvenile court had transferred custody of the child to the McCrays. A copy of the juvenile court's order was attached to the petition. On July 11, 2000, the circuit court appointed a guardian ad litem for Crockett. By interlocutory order entered October 25, 2000, a circuit judge granted the McCrays' petition for adoption, "subject to the probationary period provided by law," and granted the McCrays' petition to have the child's last name changed from Crockett to McCray. Crockett noted a general objection to entry of the interlocutory order.

Crockett filed an answer on February 6, 2001, objecting to the adoption. She asserted that she continued to withhold her consent to the adoption, that the report of the child's guardian ad litem was deficient, and that the judge should "reject, vacate, and otherwise overrule" the juvenile court's order waiving Crockett's consent. After six months had passed from entry of the interlocutory order, the trial judge held an evidentiary hearing upon the McCrays' motion for entry of a final order of adoption and Crockett's objection to the adoption.

-

The evidence at the evidentiary hearing proved Crockett has been in prison most of the child's life. Crockett testified that she was incarcerated from May 1996 to March 1999. She was again incarcerated in December 1999 for drug use. Crockett testified that she had received drug treatment in prison and that she would be eligible for parole in June 2001. Her mandatory release date from prison is in 2003.

Crockett testified that the McCrays were helping her mother and stepfather take care of the child in 1996. She testified that during that time she signed a consent giving her mother and the McCrays legal authority over the child. Crockett testified that the child has visited her in prison on weekends with Crockett's mother and brother and that she developed a bond with her daughter during the nine months when she was out of prison. Crockett expressed her concern that if the McCrays adopted her daughter and moved to Alabama, she would not see her daughter because leaving the state would be a violation of her probation. Crockett said she disagreed with the adoption and expressed her wish that the child be allowed to live with a member of her family.

Crockett's brother and his wife testified that they would like the child to be a part of their family and to live with them in North Carolina. Crockett's sister-in-law testified that, until recently, they were not aware that Crockett was interested in them rearing the child. She testified that she sees the child more than three times each year but could not "remember the last time

-

[she saw the child]."  Crockett's brother also testified that the child's move to Alabama was a concern because she would be away from Crockett's family.

The child's maternal grandmother testified that she was willing to assist in rearing the child if Crockett's brother and his wife "were not able or willing to" care for her.  She acknowledged that the McCrays were her friends, were "good providers" for the child, and never thwarted her efforts to see the child.  She testified that she was present in August 1996 at the juvenile court hearing when the McCrays initially gained legal custody of the child and that the issue whether she could care for the child was never raised at the hearing.  She also testified, however, that she did not ask for custody of the child at the August 1996 hearing.

The trial judge ruled from the bench that he would grant the petition for adoption.  He made oral findings, which included the following:

> The father of this child is unknown. [The grandmother] says today and so far as the record shows and so far as this Court knows says today for the first time that she would like to have the child.  Before that, she certainly, at the least, been ambivalent about it.  [Crockett's brother and his wife] came forward today and say that they would like to have [the child].  But, until today, they've been content to let things be.  So where has the interest and the work and the love for [the child] come from in the last four years?  And I think the answer is obvious.  It's come from Mr. and Mrs. McCray who have had custody of the child except for

-

> the first . . . four months of her life.
> They began procedure to have custody and --
> quite some years ago and procedure for this
> adoption over a year ago. . . .  I realize
> that it's a presumption in the favor of
> natural parents.  And I realize that the
> evidence needs to be clear and convincing
> that it's detrimental to the child to not do
> this.  And I think that those things have
> been shown quite clearly.

The judge also ruled that he would not grant Crockett's request for visitation, stating, "I want to tell you that my thought off the top of my head is it would be inappropriate since we are cutting legal ties with the final order.  So I'll be glad to consider that if you want to take a look at it and reflect on it, but I would not do it today."  On May 2, 2001, the trial judge entered a final order of adoption.  This appeal followed.

## II.

Crockett objected, both during the hearing and on the final order, contending that neither the social services reports nor the evidence indicated that the required home visitations were made during the probationary period.  She contends on appeal that the visitation requirements of Code § 63.1-219.19 were not met because "[t]here is no evidence in the record that the [requisite] visitations occurred."  We agree.

Code § 63.1-219.19 requires that visitations be made and a report of those visitations be filed in the circuit court.  In pertinent part, that statute provides as follows:

> A.  . . . [A]fter the entry of an
> interlocutory order of adoption, . . . if

-

the placement is a parental placement, the child-placing agency that submitted the home study . . . shall cause the child to be visited at least three times within a period of six months by an agent of such local board or department of social services or by an agent of such licensed or duly authorized child-placing agency.  Whenever practicable, such visits shall be made within the six months period immediately following the date of entry of the interlocutory order; however, no less than ninety days shall elapse between the first visit and the last visit.  The agency that placed the child, the child-placing agency that submitted the home study, the local director of social services or the licensed child-placing agency, as applicable, shall make a written report to the circuit court, in such form as the Commissioner may prescribe, of the findings made pursuant to such visitations. . . .

B.  The three supervisory visits required in subsection A shall be conducted in the presence of the child.  At least one such visit shall be conducted in the home of the petitioners in the presence of the child and both petitioners, unless the petition was filed by a single parent or one of the petitioners is no longer residing in the home.

Code § 63.1-219.19(A), (B).

The statute clearly prescribes the number of visits and the time frame in which they shall occur.  The Supreme Court has ruled that the visits serve an important function:

The interlocutory order contemplated by [the] statute . . . is for the purpose of giving the Welfare Department an opportunity to visit the home of the adopting parents, to see that the child is being properly cared for, thereby forming some opinion as to the child's future should it be permitted to remain in the home.

-

Bidwell v. McSorley, 194 Va. 135, 140, 72 S.E.2d 245, 249 (1952). Moreover, the social services report, which is premised upon those visitations, has heightened significance because only "after considering the report . . . , if the court is satisfied that the best interest of the child will be served thereby, [shall] the circuit court . . . enter the final order of adoption." Code § 63.1-219.20.

Although the report was filed with the circuit court, neither the report nor any testimony indicates the three visits were made as required by the statute. Without knowing whether the visitation requirements had been satisfied, the trial judge could not adequately assess the report. In the absence of this information in the record, the trial judge had no basis to determine that the safeguards mandated by the General Assembly were followed and that the best interest of the child was served by entering the final order of adoption. Because the evidence in the record does not indicate that these requirements were fulfilled, we hold that the judge had no basis to determine whether the statutory mandates were satisfied. We, therefore, reverse the order of adoption and remand for reconsideration and further proceedings.

### III.

Because several of the issues raised by Crockett will recur on remand and reconsideration, we address them.

First, Crockett contends the trial judge improperly found that placement of the child with the McCrays, rather than with Crockett's blood relatives, was in the best interest of the child. Because we have ruled that the trial judge's finding concerning the placement of the child is dependent, in part, upon the report of the home visitations, the trial judge must also reconsider on remand whether placement with the adoptive parents, over Crockett's relatives, is in the child's best interest.

Second, Crockett contends the trial judge erred in ruling that her consent to the adoption was withheld contrary to the child's best interest. The record reflects, however, that the juvenile court judge determined that Crockett withheld consent to the adoption contrary to the best interest of the child. That finding was made after an ore tenus hearing occurred on May 30, 2000. The juvenile court order recites that the judge considered the statutory factors, and it contains specific findings of fact on several of the relevant factors. The record does not reflect that Crockett appealed from that ruling. Accordingly, we hold that the trial judge could properly rely upon that ruling in granting the adoption.

Third, Crockett argues that the trial judge disregarded the presumption in favor of natural parents. The Supreme Court, however, has previously held as follows:

-

> [T]he presumption in favor of parental custody is rebuttable by proof that the requirements of Code § 63.1-225 [now Code § 63.1-219.10] have been met as of the date of filing the petition for adoption. Having satisfied the provisions of that statute, the proponents of adoption are entitled to an interlocutory order under Code § 63.1-226 [now Code § 63.1-219.16] if the trial court, after hearing the evidence of both the proponents and the opponents of the adoption, finds by a preponderance of the evidence that the proposed adoption would be in the child's best interests.

Szemler v. Clements, 214 Va. 639, 643, 202 S.E.2d 880, 884 (1974).

The record does not reflect that Crockett appealed from the finding in the juvenile court's order that her consent was being withheld contrary to the best interest of the child. When the trial judge entered the interlocutory order, he found that "all requirements of law have been met." The evidence supports the trial judge's ruling.

Fourth, Crockett contends the adoption order was improper because it did not provide for her visitation with the child post-adoption. The trial judge's decision not to grant visitation was based on his finding that it would be improper to grant visitation in the same order as the adoption.

"Code § 20-124.1 provides that only a person 'with a legitimate interest' has standing to request custody or visitation and that '[a] party with a legitimate interest . . . shall not include any person . . . whose parental rights have

-

been terminated by court order, either voluntarily or involuntarily.'" F.E. v. G.F.M., 35 Va. App. 648, 670-71, 547 S.E.2d 531, 542 (2001) (citation omitted). In that ruling, we also cited former Code § 63.1-233, which has been recodified as Code § 63.1-219.22. It provides, in pertinent part, as follows:

> The birth parents . . . shall, by such final order of adoption, be divested of all legal rights and obligations in respect to the child including the right to petition any court for visitation with the child. Any child adopted under the provisions of this chapter shall, from and after the entry of the interlocutory order or from and after the entry of the final order where no such interlocutory order is entered, be, to all intents and purposes, the child of the person or persons so adopting him.

Code § 63.1-219.22. Thus, we hold that the trial judge did not err in refusing Crockett's request for post-adoption visitation with the child.

Finally, Crockett contends the trial judge erred in denying her requests for a free transcript. The issue is moot because a court reporter was engaged by the McCrays to transcribe the proceedings at no cost to Crockett. Moreover, Crockett represents that "the . . . Supreme Court has indicated that [her] guardian ad litem . . . will be reimbursed for the court reporter's transcription."

-

IV.

For these reasons, we reverse the order and remand for reconsideration and a decision consistent with this opinion.

<u>Reversed and remanded.</u>