COURT OF APPEALS OF VIRGINIA

Present:   Judges Chafin, Russell and Senior Judge Clements
Argued at Richmond, Virginia

PUBLISHED

CATHLEEN NELSON AND
 WILLIAM NELSON

v.     Record No. 2041-17-2

MIDDLESEX DEPARTMENT OF SOCIAL SERVICES AND
 JOHN AND JANE DOE

OPINION BY
JUDGE WESLEY G. RUSSELL, JR.
NOVEMBER 20, 2018

FROM THE CIRCUIT COURT OF MIDDLESEX COUNTY
Jeffrey W. Shaw, Judge

Nathan A. Chapman (Chapman Law Firm, PC, on briefs), for appellants.

Carla B. Hook; Dawne Alexander (Kathleen M. McDaniel, Guardian *ad litem* for the minor children; The Law Office of Carla B. Hook; Law Office of Kathleen M. McDaniel, PLLC, on brief), for appellees.

Appellants Cathleen and William Nelson (grandparents) are the biological, paternal grandparents of two minor children, brothers who were adopted by appellees John and Jane Doe (adoptive parents). The grandparents appeal an order of the circuit court vacating a prior order granting their counsel permission to view certain files and records and dismissing their request to reopen and rehear prior proceedings.[1] For the reasons that follow, we affirm the circuit court's vacation of its October 16, 2017 order and dismissal of the remainder of the matter.

---

[1] In their notice of appeal, grandparents identify the adoptive parents, the Middlesex Department of Social Services, and the children, through their previously appointed guardian *ad litem*, as appellees. Neither the guardian *ad litem* nor the Department were parties to the adoption case from which this appeal is taken. However, given that the grandparents' circuit court pleading attempted to place in issue proceedings in which the guardian and the Department were parties and sought review of records held by the Department, they are legitimate parties in interest.

BACKGROUND

As an appellate court, we review the record "in the 'light most favorable' to the prevailing party in the circuit court and grant to that party the benefit of 'all reasonable inferences fairly deducible therefrom.'" Toms v. Hanover Dep't of Soc. Servs., 46 Va. App. 257, 262, 616 S.E.2d 765, 767 (2005) (citation omitted). In addition, "[u]nder basic principles of appellate review, we may not go beyond the record developed in the trial court." Boyd v. Cty. of Henrico, 42 Va. App. 495, 505 n.4, 592 S.E.2d 768, 773 n.4 (2004) (en banc); see also John v. Im, 263 Va. 315, 320, 559 S.E.2d 694, 697 (2002).

Because of allegations of abuse, the Middlesex Department of Social Services (Department) sought to terminate the parental rights of the biological father of the children. The termination proceedings were initiated in the Middlesex County Juvenile and Domestic Relations District Court (JDR court) and eventually resolved in the Middlesex County Circuit Court. While the termination proceedings related to father's rights were pending, grandfather filed independent petitions for custody of the children; however, grandfather withdrew the petitions on November 30, 2016 before the circuit court had entered a final order in the termination proceedings. Ultimately, father's parental rights were terminated by the circuit court by order entered on December 8, 2016.[2] Father did not appeal the circuit court's termination decision. Accordingly, the termination order became a final judgment on January 10, 2017.[3]

---

[2] The biological mother's parental rights in the children were also the subject of litigation. Ultimately, she consented to termination, and the order effectuating the termination was entered by the JDR court on February 8, 2017.

[3] Absent an exception to the general rule, the circuit court lost jurisdiction over this matter on December 30, 2016, pursuant to Rule 1:1. Father had thirty days from the final order to note an appeal to this Court, Rule 5A:6(a), but did not do so. Because the thirty-day appeal period ended on a weekend, the time in which to file an appeal did not run until the following Monday, January 9, 2017.

Pursuant to the termination orders, the children were placed in the custody of the Department, which was granted "the authority to place the child[ren] for adoption and consent thereto . . . ." The Department placed the children with the adoptive parents on April 20, 2016.

On April 3, 2017, both grandparents filed petitions in the JDR court for custody and visitation of the children, alleging simply that the brothers were children whose custody and visitation "require[d] determination" pursuant to Code § 16.1-241(A). The blanks asking the "[p]etitioner's relationship to child" were not completed. A guardian *ad litem* was appointed on April 25, 2017, for the brothers for the JDR court proceedings, and a hearing was set for July 28, 2017.

On April 17, 2017, after almost a year of having physical custody of the children, the adoptive parents petitioned the circuit court to allow them to adopt the children. Attached to the adoption petition were the orders of termination and forms showing that the Department had consented to the adoption in March of 2017. The petition also included a report of investigation prepared by the Department. The Department was not a party to the adoption proceeding and did not participate other than the above-referenced documents being attached to the petition.

Upon review of the petition, the circuit court noted that all of the statutory requirements had been satisfied and, consistent with Code § 63.2-1210, elected to waive any order of reference and to dispense with a probationary period and interlocutory order. Specifically finding "that the best interests of [the] children will be promoted by the [] adoptions[,]" the circuit court granted the adoptive parents' petition and a final order of adoption was entered on April 19, 2017. No motions to reconsider were filed within twenty-one days of the entry of the order, and no appeal challenging the adoption was noted within thirty days of the entry of the order.[4]

---

[4] Absent an exception to the general rule, the circuit court lost jurisdiction over this matter on May 11, 2017 pursuant to Rule 1:1. The last day on which an appeal of the adoption order could have been noted was May 19, 2017. Rule 5A:6(a).

On July 28, 2017, the return date for the grandparents' custody and visitation petitions in the JDR court, the grandparents appeared and withdrew the petitions. As a result, the JDR court dismissed the petitions.

Several months later, on October 11, 2017, the grandparents' attorney submitted a letter to the circuit court seeking permission to review the adoption file and "any record the [JDR court] or Department [] may have related to [the children]."[5] Claiming that the grandparents were "parties in interest to the adoption[,]" the letter alleged that reviewing the information was necessary "to examine the appropriateness of the adoption process." Grandparents further requested a stay of entry of the final order of adoption or the reopening of the matter for "time to confirm that things were handled appropriately by the [c]ourt and/or the Department[.]" The circuit court granted the request to view the files on October 16, 2017, by order entitled "Order Granting Permission to View"; the order did not purport to stay, reopen, or address the April 19, 2017 adoption order.[6]

On October 16, 2017, 174 days after the final order of adoption was entered, grandparents filed a motion for a new trial or to rehear the adoption matter, asserting that the case "involve[d] the fundamental rights of [] grandparents to assist in the custody of children to whom they are biologically related" and that "[i]t is not in the best interests of the [c]hildren that [they] be adopted by a non-relative when the paternal grandparents are interested, ready and available." In support of their motion, the grandparents alleged that they "did not consent to the adoption" and were not aware or given notice of the adoption proceedings and that their interest and pending JDR court petitions should have been considered by the circuit court. The motion further stated that "there

_____

[5] From the face of the letter, it does not appear that either the Department or the adoptive parents were sent a copy of the letter.

[6] Neither the Department nor the adoptive parents were parties to the October 16, 2017 order regarding file and record access; the only counsel who endorsed the order was counsel for the grandparents, who signed the order "I ASK FOR THIS[.]"

*may* have been fraud, or misleading and disingenuous representations to this [c]ourt[.]"  (Emphasis added).  Grandparents asked the circuit court to grant their motion "to rehear, reopen the matter, [and to] vacate or otherwise suspend" the adoption order.  The motion does not allege specifically that the adoption order was void, nor does the motion mention the termination proceedings.

In response, on October 18, 2017, the Department, citing confidentiality statutes and the lack of notice to the affected parties, filed a motion to vacate the "Order Granting Permission to View."  By order entered the same day, the circuit court suspended execution of the "Order Granting Permission to View" pending a hearing to determine the circuit court's authority to grant the access.  No order suspending or vacating the adoption order was entered at that time.

On October 30, 2017, the adoptive parents filed a motion to deny the grandparents' motion to rehear, to prohibit contact between grandparents and the children, and to enjoin any dissemination of any information learned from any review of the adoption file.  On November 14, 2017, the guardian *ad litem* who had been appointed in prior proceedings filed a motion to dismiss the grandparents' motion for rehearing or new trial.  The guardian argued that the grandparents lacked standing, that the circuit court no longer had jurisdiction, and that disrupting the adoption would harm the children.

The circuit court held a hearing on November 15, 2017.  The grandparents, adoptive parents, Department, and guardian all participated without objection.  No testimony was elicited.  The circuit court first determined what issues were before it.  The grandparents averred, "We are here specifically today to get access to the court's file . . . ."  Nonetheless, the circuit court commented,

> I think . . . we first need to decide what are the grounds that someone
> could possibly challenge in the six-month period as opposed to
> within 21 days and do those grounds apply here, which that would
> then dictate whether there would be any basis to move forward to
> anything on the merits.  So I think we need to determine are you even
> able to win to have me even reopen it under the six-month rule.  In
> other words, what grounds are good enough to reopen something;
> and if . . . any of those grounds [are] present.

Grandparents acknowledged that the issues were intertwined, but contended, "the reason we need to see the court's file is so we know whether or not we can challenge successfully the final order of adoption."

Appellees argued that the grandparents had no standing because the final order of adoption severed any ties between them and the children. The circuit court found this reasoning circular and reiterated, "I'm not saying they can challenge it. What I'm saying is what are the grounds to challenge it at this stage and can they be met. So that's what I'd like to address." The circuit court then queried what constituted valid reasons to challenge the adoption, whether the grandparents were entitled to notice, and whether their consent was required.

The grandparents then maintained, "For the adoption to be proper, the parents' rights have to be terminated . . . . However, for the termination to be proper, the grandparents have had to been considered [as potential custodians] . . . under [Code §] 16.1-283." They then explained they also were seeking permission to view the files and records in order to review the termination proceedings. Counsel stated that he had had access to the adoption file "because after the [*ex parte*] order [granting permission] was entered, I drove up here and looked at the file."

Grandparents then likened adoption cases to custody proceedings under Title 16.1 and argued that the circuit court, in considering the adoption file, similar to the review of custody petitions, "either knew or should have been informed" of their pending JDR custody petitions. When the circuit court asked grandparents to "point me to the statute that requires the adoption petitioner to include all other litigation pending on the case[,]" grandparents responded, "[we] don't know that" and continued that they "can't point you to a code section yet, that they should have had notice that an adoption was pending . . .[; b]ut . . . either the juvenile court should have been aware that an adoption was pending or the circuit court should have been aware that custody and visitations were pending."

- 6 -

The grandparents summarized their argument as follows:

> now the [c]ourt may understand why we need to see the file, but
> they're saying these people didn't have notice because father's rights
> were terminate[d]. Well, if they were never considered and father's
> rights were terminated, you have parties interested in custody who
> were never considered and have matters pending, and despite that,
> the [c]ourt enters an order of adoption.

Ultimately, the circuit court agreed that grandparents were on a "fishing expedition." The circuit court acknowledged their position that "I can't determine fraud unless I see the file," but the circuit court stated "you've got to allege something that there's fraud of some sort before I would open the file."

On December 20, 2017, the circuit court issued an order dismissing grandparents' motion for new trial or to rehear and vacating the "Order Granting Permission to View." The order reflects that the circuit court made the following specific findings:

> 1. There is no requirement that notice of a pending adoption petition
> be given to grandparents of the child and/or those petitioning for
> custody of that child;
>
> 2. There is no requirement that grandparents of a child and/or those
> petitioning for custody of a child grant consent to the adoption of that
> child; and
>
> 3. Final orders in foster care proceedings and/or termination of
> parental rights proceedings cannot be collaterally attacked in
> adoption proceedings.

The grandparents noted their appeal to this Court, in which they assert that the circuit court erred in: 1) "opining that the paternal grandparents did not have standing because the father's residual parental rights had been terminated"; 2) finding that the grandparents were not entitled to any notice of the adoption proceedings; 3) suspending permission to view the relevant files; 4) "finding on November 15, 2017 that it could not examine or correct any errors in the termination of parental rights process as that would be collaterally attacking prior final orders"; and 5) denying the motion for a new trial or to rehear the adoption matter.

ANALYSIS

Central to our resolution of a majority of grandparents' appeal is the question of whether their pleading was properly before the circuit court. The resolution of this question involves the interpretation of both the Rules of the Virginia Supreme Court and Code § 63.2-1216. The interpretation of the Rules and of statutes present questions of law that "we review *de novo*." Minor v. Commonwealth, 66 Va. App. 728, 738, 791 S.E.2d 757, 762 (2016) (citing LaCava v. Commonwealth, 283 Va. 465, 470-71, 722 S.E.2d 838, 840 (2012)).

### I. Code § 63.2-1216 does not extend a circuit court's jurisdiction over a case

Code § 63.2-1216 provides that

> After the expiration of six months from the date of entry of any final order of adoption from which no appeal has been taken to the Court of Appeals, the validity thereof shall not be subject to attack in any proceedings, collateral or direct, for any reason, including but not limited to fraud, duress, failure to give any required notice, failure of any procedural requirement, or lack of jurisdiction over any person, and such order shall be final for all purposes.

The purpose of the statute is clear. The General Assembly made the policy choice to favor finality, recognizing that repeatedly subjecting a child to multiple changes in or even mere challenges to who his legal parents are has the potential to cause significant harm to the child. As we previously have noted in interpreting a predecessor version of the statute, "the policy of stability in a family relationship, particularly when a young minor is involved, outweighs the possible loss to a person whose rights are cut off through fraud and ignorance." F.E. v. G.F.M., 35 Va. App. 648, 661, 547 S.E.2d 531, 537 (2001) (*en banc*) (internal quotation marks and citations omitted).

Grandparents argue that Code § 63.2-1216 was intended to extend the period of time in which a circuit court has jurisdiction over an adoption order beyond the familiar twenty-one-day

period specified in Rule 1:1.[7] Because the plain language of the statute does not compel such a result and such an interpretation would limit rather than advance the statute's purpose to foster finality, we decline to adopt it. Accordingly, the finality provision of Rule 1:1 applies to the adoption order at issue in this appeal.

The bar imposed by Rule 1:1 is significant; however, it is not absolute. Long after it has run, a party still may challenge a circuit court's order in certain situations. For example, an order can be amended to correct a clerical error or to make the order accurately reflect what actually transpired in the trial court. See Code § 8.01-428(B); Minor, 66 Va. App. at 740-41, 791 S.E.2d at 763. Rule 1:1 also does not prevent a party from collaterally attacking a judgment entered more than twenty-one days earlier if it is void because it was procured by fraud or the circuit court that entered the judgment lacked subject matter jurisdiction. Rook v. Rook, 233 Va. 92, 95, 353 S.E.2d 756, 758 (1987). Judgments rendered when the circuit court lacked personal jurisdiction over one of the parties also are void, and thus, are also subject to collateral attack at any time. McCulley v. Brooks & Co. Gen. Contractors, Inc., 295 Va. 583, 589-90, 816 S.E.2d 270, 272-73 (2018). In short, there are recognized exceptions to the finality imposed by Rule 1:1 that allow a circuit court's judgment to be collaterally attacked long after the twenty-one-day period has run.

Properly understood, Code § 63.2-1216 sets an outer boundary within which a party may bring a challenge based on such an exception to Rule 1:1's general rule. In the six months after the entry of an adoption order, a person with standing may challenge an adoption order more than twenty-one days after its entry for any of the grounds that would permit a challenge under

---

[7] Rule 1:1 provides, in pertinent part, that "[a]ll final judgments, orders, and decrees, irrespective of terms of court, shall remain under the control of the trial court and subject to be modified, vacated, or suspended for twenty-one days after the date of entry, and no longer."

Rule 1:1. After the six-month period has run, however, Code § 63.2-1216 prevents a person from challenging the adoption order even if one of the exceptions to Rule 1:1 is present. This remains true even if the exception is based upon "fraud, duress, failure to give any required notice, failure of any procedural requirement, or lack of jurisdiction over any person." Code § 63.2-1216.[8]

With the exception of their challenge to the circuit court vacating its order regarding file and records access, grandparents' assignments of error assert that the circuit court erred in failing to stay, review, reopen, or modify both the circuit court's December 8, 2016 order terminating father's parental rights, which was entered more than 300 days before grandparents instituted this action in circuit court, and the circuit court's April 19, 2017 adoption order, which was entered 174 days before grandparents instituted this action in circuit court. Because both orders were entered more than twenty-one days before the grandparents filed their initial pleading, grandparents must show that some exception to Rule 1:1's finality rule applied.[9]

II. None of the reasons offered by grandparents are sufficient to avoid the finality rule of Rule 1:1

In the proceedings in the circuit court and on appeal, grandparents provide four basic reasons they contend permitted the circuit court to address final orders entered far more than twenty-one days before they initiated the current action. First, they contend that they were never given notice of the adoption proceeding. Second, they argue that they did not consent to the

---

[8] We previously have held that Code § 63.2-1216's seemingly absolute bar to challenges to an adoption order after six months is subject to constitutional exceptions related to the fundamental liberty interest a parent has in raising his or her child. F.E., 35 Va. App. at 670, 547 S.E.2d at 542; see also McCallum v. Salazar, 49 Va. App. 51, 57-58, 636 S.E.2d 486, 488-89 (2006). Because this appeal does not involve the claim of a parent, such an exception is not present here.

[9] Given our resolution of this portion of the appeal on the Rule 1:1 issue, we do not address whether the six-month period of Code § 63.2-1216 is stayed by the mere filing of a challenge or requires that the matter be adjudicated in six months absent a valid suspending order.

adoption proceedings.  Next, they assert that the adoption is invalid because the circuit court was not

informed of their pending custody and visitation petitions in the JDR court.  Finally, they argue that

the termination of father's rights might be invalid because "there *may* have been fraud, or

misleading and disingenuous representations to this [c]ourt[.]"  (Emphasis added).  We address each

contention in turn.

### A.  Grandparents were not entitled to notice of the adoption proceeding

Grandparents argue that the circuit court's prior decisions are subject to being reopened

because they were not provided notice of the adoption proceeding.  The central failing in this

argument is that grandparents were not necessary parties to the adoption proceeding and were not

entitled to notice of the proceeding.

Virginia's statutory scheme governing adoptions specifies who must receive notice of an

adoption proceeding.  See, e.g., Code § 63.2-1203 (requiring notice and service of the adoption

petition on non-consenting biological parents).[10]  Noticeably absent from the list of persons who are

entitled to notice are grandparents who are not custodians or guardians of the child to be adopted.

When asked for any statute that required or otherwise entitled them to notice of the adoption

proceeding, grandparents could not identify one.

Faced with a lack of any statutory basis for their claim regarding notice of the adoption

proceeding, grandparents, citing cases regarding the fundamental nature of the *parent*-child

relationship, argue they had a constitutional right to such notice.  We have recognized that "'the

interest of *parents* in the care, custody, and control of their children . . . is perhaps the oldest of

---

[10] We note that Code § 63.2-1202(G) provides that "[n]o notice or consent shall be
required of any person whose parental rights have been terminated by a court of competent
jurisdiction . . . ."  Although, by definition, the grandparents were not a parent who had his or her
parental rights terminated, their son, who provides their link to the children, did have his rights in
the children terminated.  It would be odd indeed if the grandparents had a superior claim to
notice than their son.

the fundamental liberty interests recognized by' the United States Supreme Court." Geouge v. Traylor, 68 Va. App. 343, 368, 808 S.E.2d 541, 553 (2017) (emphasis added) (ellipsis in original) (quoting Troxel v. Granville, 530 U.S. 57, 65 (2000) (plurality opinion)).  Such an interest gives rise to constitutional due process protections, including notice.  Id. at 378 n.16, 808 S.E.2d at 558 n.16.  However, the fundamental interest belongs to the parent, not the grandparents.  Grandparents, who are neither custodians nor guardians of the children at issue, have not identified any case holding that they possess such an interest requiring that they receive notice of a pending adoption.[11]  Absent some authority supporting grandparents' position, we decline to create such a rule here, especially given that the father, through whom grandparents claim their connection with the children, is alive and has had his rights in the children terminated.

For the reason stated above, neither the Constitution nor Virginia statutes required that the grandparents receive notice of the adoption proceeding.  Absent such a requirement, the lack of notice to the grandparents does not, in any way, call into question the validity of the circuit court's order of adoption.  Accordingly, the alleged lack of notice does not provide a basis to exempt the adoption order from the finality provisions of Rule 1:1.

### B.  Grandparents' consent was not required

Grandparents next seek to reopen the prior orders by arguing that the adoption was invalid because they did not consent to the adoption.  This argument fails because the consent of

---

[11] Troxel is one of the cases cited by the grandparents regarding the fundamental liberty interest a parent has in raising his or her child.  Ironically, in that case, the United States Supreme Court vindicated a *parent*'s fundamental interest in the relationship by affirming the Washington Supreme Court's determination that a Washington statute improperly allowed third-parties (in that case grandparents) to petition for visitation over the objection of a fit parent. Thus, despite its belief that "[i]n an ideal world, parents might always seek to cultivate the bonds between grandparents and their grandchildren," the plurality recognized that the fundamental interest belongs to parents, not grandparents.  Troxel, 530 U.S. at 70.

grandparents who are neither custodians nor guardians of the children is not required in an adoption proceeding.

Code § 63.2-1202 provides whose consent is required in adoption proceedings. In general, "consent of the birth parents is necessary for an adoption in Virginia." Geouge, 68 Va. App. at 369, 808 S.E.2d at 553 (citing Code § 63.2-1202). Code § 63.2-1202(E), (F), (G),[12] and (H) provides instances where such parental consent is unnecessary, and Code § 63.2-1203 permits adoptions without parental consent if the circuit court "finds that the valid consent . . . is withheld contrary to the best interests of the child . . . or is unobtainable . . . ." Code § 63.2-1202(C)(2) provides that consent is required from "the child-placing agency or the local board having custody of the child, with right to place him for adoption, through court commitment or parental agreement . . . ." Noticeably absent from the persons or entities whose consent is required are grandparents who are neither custodians nor guardians of the children.

Grandparents have identified no statute or constitutional right which required that they consent to the adoption. The only required consent was the consent of the Department, which was the agency "having custody of the child[ren], with right to place [them] for adoption, through court commitment . . . ." Code § 63.2-1202(C)(2). The Department consented to the adoption in March of 2017. Because all necessary consents were obtained and presented, the lack of consent by the grandparents does not provide a basis to exempt the adoption order from the finality provisions of Rule 1:1.

---

[12] Code § 63.2-1202(G) provides that "[n]o notice or consent shall be required of any person whose parental rights have been terminated by a court of competent jurisdiction, including foreign courts that have competent jurisdiction." Accordingly, no parental consent was required in this case.

C. Adoptive parents had no duty to inform the circuit court of matters pending in the JDR court

Grandparents next argue that the adoption order is invalid because the adoptive parents did not inform the circuit court that grandparents had filed custody and visitation petitions in the JDR court on April 3, 2017.[13] Once again, grandparents can point to no statute, Rule of Court, or other authority requiring that such information be provided to the circuit court in an adoption proceeding. Rather, they assert that "on[]e must aver that there are no other matters related to the children pending, or if there are other matters pending a petitioner must list them upon their application for [a JDR court] to address custody or visitation." They also argue that such information must be provided in other, non-adoption cases. From these unrelated circumstances, they argue that, as a matter of public policy, "a similar requirement *should* exist for the matter of adoption, especially given the finality of the proceeding and situations exactly like this one." (Emphasis added).

This argument misunderstands our role. "Public policy questions . . . fall within the purview of the General Assembly. In a regime of separated powers that assigns to the legislature the responsibility for charting public policy, [an appellate court's] function is limited to adjudicating . . . question[s] of law[.]" Daily Press, LLC v. Office of the Exec. Sec'y, 293 Va. 551, 557, 800 S.E.2d 822, 824 (2017). Thus, it is not within our ambit to create the requirement that grandparents seek. Because, as their argument concedes, no such requirement exists, the failure of the adoptive parents to inform the circuit court of the grandparents' JDR court petitions does not provide a basis to exempt the adoption order from the finality provisions of Rule 1:1.

---

[13] Nothing in the record even suggests that the adoptive parents were aware of the grandparents' JDR court petitions when the adoption petition was filed. Furthermore, we note that the Department consented to the adoptions in March of 2017, before the grandparents filed the JDR court petitions.

- 14 -

D. Grandparents' reference to possible fraud

Grandparents' final argument as to why the adoption order can be reopened is a collateral attack on the circuit court's December 8, 2016 decision terminating father's parental rights. They contend that there "may" have been fraud in the proceeding that terminated father's parental rights, and therefore, both that proceeding and the subsequent adoption are susceptible to challenge.

Although, as noted above, a judgment obtained by fraud is void and can be subject to attack long after Rule 1:1's twenty-one-day period has run, grandparents do not actually allege fraud.[14] Rather, they note that Code § 16.1-283, which governs proceedings to terminate parental rights, requires that the "court shall give a consideration to granting custody to relatives of the child, including grandparents." Code § 16.1-283(A). They contend that they were not contacted regarding taking custody of the children when father's rights were terminated, and thus, reason that fraud "may" have occurred.

As we previously have noted, asserting that something may have happened is fundamentally different than asserting that it did happen. "Legally, there is a world of difference in asserting that something 'is' the case and that something is merely possible." Geouge, 68 Va. App. at 367 n.7, 808 S.E.2d at 552 n.7. This is especially true in situations like this, where grandparents are divining a potential allegation about the circuit court termination proceeding without any actual knowledge of that proceeding.[15] There is no allegation that the grandparents were present for the proceeding. There is no allegation that their son told the grandparents that

---

[14] Although a void judgment can be subject to collateral attack by an interested party, we note that we previously have held that a grandmother, whom a court had appointed the custodian and guardian of a child, did not have sufficient interest to have standing to appeal the termination of her daughter's parental rights in that child. Tackett v. Arlington Cty. Dep't of Human Servs., 62 Va. App. 296, 325-26, 746 S.E.2d 509, 523-24 (2013).

[15] The JDR court termination proceeding became a nullity once the case was appealed to the circuit court for a trial *de novo*. See generally Turner v. Commonwealth, 49 Va. App. 381, 386, 641 S.E.2d 771, 773 (2007).

the circuit court failed to consider relatives for placement.[16]  Furthermore, the allegation does not

consider the weight that the circuit court could have given to the fact that grandfather withdrew

his initial custody petition on November 30, 2016, while the termination proceedings were

ongoing.[17]  In short, to set aside or reopen the final order in either the termination case or the

adoption case, grandparents must both allege and prove the orders were obtained by fraud.  Here,

the failure to even allege that fraud occurred is fatal to their attempt to reopen either case.

Absent an exception to the finality rule of Rule 1:1, the circuit court did not have jurisdiction

to entertain grandparents' challenges to the order terminating father's parental rights or the order

granting the adoption.  Because no such exception is present on this record, the circuit court

correctly dismissed grandparents' challenge to these orders.

III.  Grandparents' request to see the adoption file and other records pertaining to the children[18]

Unlike their other assignments of error, grandparents' challenge to the circuit court's

decision to vacate its *ex parte* October 16, 2017 order, which had authorized their attorney to view

the circuit court's case file in the adoption matter "as well as any records the [JDR court] or the

Department . . . may have related to" the children, does not seek to collaterally attack prior final

---

[16] This is particularly significant in this case because the circuit court did not terminate mother's parental rights at that time, leaving her as a potential custodial relative.  Her rights were not terminated until she voluntarily terminated them months later.

[17] As noted above, the circuit court's termination of father's rights was never appealed. The termination proceeding record is not a part of the record in the adoption proceeding. Accordingly, the record before us does not contain the evidence that was introduced in the termination proceeding.  There is no allegation that a fraud occurred (or even might have occurred) in the adoption proceeding.

[18] We note that, although grandparents' assignment of error seeks review of the circuit court's suspension of "the execution of . . . grandparents['] permission to view the circuit court['s] . . . file related to the termination of parental rights . . . ," the circuit court's October 16, 2017 order did not grant such permission.  Rather, the only circuit court records it authorized grandparents' counsel to view were in "file number CA17-01," which is the adoption case, not the circuit court termination case.  Because the circuit court order at issue did not grant grandparents permission to review the circuit court termination file, that issue is not before us.

orders of the circuit court. Accordingly, Rule 1:1 did not preclude the circuit court from addressing the issue, and we can address it on appeal.

In neither their *ex parte* request to the circuit court to be allowed to view certain records, nor at the hearing in the circuit court, nor on brief or in oral argument in this Court have grandparents cited any statutory or other authority that would allow them access to the requested files and information.[19] Rather, they essentially argue that discovery of what is in the various files may help them assert a basis for reopening the termination or adoption cases.

A desire to see such information and records does not provide a legal basis to do so. Unlike other types of court and governmental proceedings, juvenile, adoption, and social services records and proceedings generally are not open to the public. Subject to certain exceptions, juvenile court records are to be kept confidential. Code § 16.1-305. Similarly, records of local departments of social services generally are to be kept confidential unless an exception applies. See Code §§ 63.2-104 and 63.2-105.[20] Furthermore, adoption records are also subject to confidentiality provisions. See Code §§ 63.2-1246 and 63.2-1247. Grandparents do not assert that they fall within any of the statutory exceptions.

---

[19] Grandparents do incorporate by reference their argument that they were parties in interest in both the termination proceeding and the adoption proceeding, and thus, have a due process right to review the requested files. As noted above, their status as biological grandparents did not provide them with a sufficient interest so as to give rise to due process protections.

[20] One of the exceptions in Code § 63.2-105 provides records access to "a parent, grandparent, or any other person when such parent, grandparent or other person would be considered by the local department as a potential caretaker of the child in the event the local department has to remove the child from his custodian . . . ." Code § 63.2-105(A)(iv). This exception does not apply because, at the time the grandparents requested access, father's parental rights had been terminated for almost a year and the adoption had been in effect for almost six months. Therefore, at the time of the request, grandparents were not "potential caretaker[s] of the child[ren] in the event the local department has to remove the child[ren] from [their] custodian . . . ."

Given the statutory directives regarding confidentiality, the fact that father's parental rights had been terminated for almost a year and that a valid final adoption order had been entered almost six months before the request was made, the circuit court did not err in vacating its *ex parte* order.

## CONCLUSION

Although we deny grandparents the relief they seek, we do not, in any way, suggest that they have been motivated by anything other than their belief as to what is in the best interests of the children. Such a belief, however, does not correct the legal defects in the positions they have asserted. Accordingly, we affirm the circuit court's decision to vacate its October 16, 2017 order and to dismiss the remainder of the matter.

Affirmed.