COURT OF APPEALS OF VIRGINIA

Present: Judges Huff, Russell and Athey
Argued at Fredericksburg, Virginia

TRACEY COOK AND
 ARTHUR COOK

                                                            MEMORANDUM OPINION* BY
v.       Record No. 1047-19-4                      JUDGE WESLEY G. RUSSELL, JR.
                                                                   FEBRUARY 4, 2020
GARY SCOTT JENSEN AND
 JENNIFER DEBRA SPRINGER JENSEN

FROM THE CIRCUIT COURT OF STAFFORD COUNTY
Victoria A.B. Willis, Judge

        Joseph T. Brown for appellants.

        Michael J. George for appellees.

        Appellants, Tracey and Arthur Cook, are the maternal grandparents of the child at the center

of this litigation. They seek to challenge the circuit court's granting of the adoption petition of Gary

and Jennifer Jensen, the appellees. Jennifer Jensen is the child's paternal grandmother and Gary

Jensen is her husband, but is not the child's biological grandfather. For the reasons that follow, the

judgment of the circuit court is affirmed.

BACKGROUND

        The child, who is autistic and has special needs, was born on April 9, 2013. Prior to

February 26, 2016, the child lived with his biological parents and older half-sister, but, on that date,

his mother died from a drug overdose, and his father was incarcerated on multiple felony charges.

Thereafter, the child resided exclusively with the Jensens in Stafford County, and his half-sister took

residence with the Cooks in Spotsylvania County.

        * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

On August 3, 2016, in a proceeding that is not the subject of this appeal, the Spotsylvania County Juvenile and Domestic Relations District Court (JDR court) entered an order awarding the Jensens sole legal and physical custody of the child. The order also granted the Cooks visitation in accordance with an agreement the Cooks and Jensens had reached. The visitation agreement contemplated that the Cooks would have weekly visits of two to three hours with an end goal of weekend overnight visits. No set visitation schedule was established; rather, scheduling was "to be provided by the [Jensens]." The agreement also contemplated that the child's special needs would take priority in conducting visitation.[1]

In April 2017, a dispute arose between the Cooks and Jensens regarding visitation. The Jensens did not want to allow the Cooks visitation of the child unless the visitation was supervised, even though the visitation order did not specifically require supervision. The Cooks filed in the JDR court a motion to show cause against the Jensens and a motion to amend the custody and visitation order.

On May 1, 2017, while the JDR court matters were pending, the Jensens filed a petition for adoption in the Circuit Court of Stafford County (circuit court) seeking to adopt the child. No notice was provided to the Cooks or to the JDR court. The Jensens indicated that they were filing their petition pursuant to Code § 63.2-1241, which pertains to adoptions by stepparents, but the petition clearly avers that "[Mrs.] Jensen is the paternal grandmother of the minor child" while "[Mr.] Jensen is the step-paternal grandfather[.]" The following day, the Jensens filed with the circuit court a copy of the father's consent to the adoption, which had been executed before a notary

---

[1] The agreement specified that the child's "progress, school and any therapy schedules will dictate when the[] visits occur" and acknowledged "that things happen[.]" The agreement recognized that the child "requires a consistent schedule and consistent behavior modification techniques" and took into account "the developmental and possible future diagnoses that may occur including learning disabilities, non-verbal situation, and early intervention requirements." The agreement noted that "[the Cooks] understand the need to be flexible, go slowly, and give [the child] time to adjust."

on April 14, 2017. In addition to stating his consent to the adoption of the child by his mother and stepfather, father attested that he understood that he was entitled to counsel and that he waived such right, that no financial consideration had been given or received in relation to the proposed adoption, and that execution of the consent was done "of [his] own free will" and without coercion. He further acknowledged that the adoption would terminate his parental rights.

The circuit court entered an order of reference pursuant to Code § 63.2-1208 directing the local Department of Social Services (DSS) to "make a thorough investigation of the matter in accordance with [Code §] 63.2-1242 . . . [and] report thereon in writing to this [c]ourt . . . ." DSS filed its investigative report on August 8, 2017. On the certificate of service of the report, DSS indicated that the report was delivered in accordance with Code §§ 63.2-1208 and 1242.[2] In its report, DSS noted the grandparent relationship of the Jensens to the child, their financial circumstances, and the child's developmental status. Ultimately, DSS recommended that the petition for adoption be granted.

On August 22, 2017, the circuit court entered a final order of adoption granting the Jensens' petition. The order noted that "all requirements of the applicable statutes have been complied with to the satisfaction of the court" and that "the best interest[s] of the child will be promoted by such adoption[;]" accordingly, the circuit court ordered that, "pursuant to [Code §] 63.2-1241, [the child] is henceforth, for all intents and purposes, the child of [the Jensens] . . . ." Before the end of August 2017, the Cooks became aware that the circuit court had entered the adoption order.[3]

---

[2] Code § 63.2-1242 relates specifically to investigative reports undertaken for stepparent adoptions.

[3] In pleadings filed in the circuit court, the Cooks aver that the guardian *ad litem* in the JDR custody/visitation proceeding learned of the entry of the adoption order in August 2017. In oral argument in this Court, counsel for the Cooks could not identify the exact date the Cooks became aware of the entry of the August 22, 2017 order; however, he conceded that the Cooks learned of it from the guardian *ad litem* and likely learned of it in August 2017.

In the ordinary course, the circuit court lost jurisdiction over the matter on September 12, 2017, twenty-one days after entry of the August 22, 2017 order. See Rule 1:1 ("All final judgments, orders, and decrees, irrespective of terms of court, shall remain under the control of the trial court and subject to be modified, vacated, or suspended for twenty-one days after the date of entry, and no longer."). Furthermore, no appeal of the order was noted in the time provided for in Rule 5A:6 ("No appeal shall be allowed unless, within 30 days after entry of final judgment or other appealable order or decree . . . , counsel files with the clerk of the trial court a notice of appeal, and at the same time mails or delivers a copy of such notice to all opposing counsel."). Accordingly, absent an exception to the general rule, the August 22, 2017 order became a final, non-appealable order when no appeal was noted before the September 21, 2017 deadline.

Despite being aware of the order in August, the Cooks took no action for more than two months. On November 9, 2017, they filed in the circuit court a motion to vacate the adoption order. They sought to intervene in the matter and argued that the circuit court had erred in granting the adoption. Although the Cooks advanced several arguments in the motion, they did not expressly allege that the adoption order was void *ab initio* or raise any challenge to the circuit court's subject matter jurisdiction.[4] In response to the Cooks' motion to vacate, the Jensens asserted that the Cooks had no standing to challenge the adoption order.

The circuit court held a hearing on the Cooks' motion on January 26, 2018. The parties and at least one other witness testified; however, no court reporter was present, and thus, no transcript of

---

[4] At a January 22, 2019 hearing in the circuit court, the Cooks repeatedly conceded that their November 9, 2017 motion did not challenge the jurisdiction of the circuit court to have entered the initial August 22, 2017 adoption order. Specifically, referencing the November 9, 2017 motion and the resulting argument, counsel for the Cooks stated that "jurisdiction wasn't specifically pled" and that the Cooks, prior to an October 12, 2018 filing, had "never asked the [circuit c]ourt to rule on jurisdiction." Later in the January 22, 2019 hearing, counsel for the Cooks reiterated that the November 9, 2017 motion did not raise a jurisdictional challenge, stating "[w]e are raising new issues here, and jurisdiction was not raised in the prior" hearing and that "[t]here was no jurisdiction argument made in the prior hearing[.]"

the hearing was created.[5]  Accordingly, we do not know with specificity the arguments made by the parties or the testimony that was adduced at the hearing.  We do not know if any of the arguments raised in the motion that had been filed were abandoned.  Nonetheless, the circuit court entered multiple orders and letter opinions related to the hearing that provide us with at least some idea as to what transpired at the hearing.

After indicating it would take the matter under advisement, the circuit court, on the day of the hearing, entered an order specifying the issues before it.  Per the order, the circuit court was to decide:  (1) whether "the Cooks or [the child's guardian *ad litem* (GAL) from the JDR court custody/visitation proceeding] have standing to challenge the final adoption order"; (2) the "remedy/ies [that] would correct the defects (procedural) in the adoption"; and (3) whether "the court [should] appoint a GAL to act in the best interests of the child, and if so[,] should the court appoint [the child's GAL from the JDR court custody/visitation proceeding] or another GAL."  The child's GAL from the JDR court custody/visitation proceeding, counsel for the Cooks, and counsel for the Jensens all endorsed the order without objection, confirming that the issues the circuit court was to resolve were the potential appointment of a GAL, standing, and the correction of alleged "procedural" defects underlying the August 22, 2017 final order of adoption.

The circuit court issued a letter opinion on February 2, 2018.  The circuit court concluded that neither the Cooks nor the child's GAL from the JDR court custody/visitation proceeding had standing to challenge the final order of adoption.  In light of this conclusion, the circuit court determined that it was "unnecessary" for it "to consider the arguments of counsel regarding the reappointment or the appointment of a guardian ad litem[.]"  Finally, the circuit court addressed the issue of whether there were defects in the August 22, 2017 order of adoption.

---

[5] In addition to the lack of a transcript of the hearing, no written statement of facts in lieu of a transcript regarding the hearing was made a part of the record pursuant to Rule 5A:8(c).

The circuit court determined that the August 22, 2017 adoption order did contain an error. Specifically, consistent with the adoption petition filed by the Jensens, the August 22, 2017 order granted an adoption pursuant to Code § 63.2-1241, which governs stepparent adoptions. Because neither Jensen was the child's stepparent, the circuit court found that this constituted an error; however, the circuit court viewed it as a mere clerical error that "made no impact on the process or the investigation conducted by the Department of Social Services." The circuit court determined that the statutory reference in the adoption order "should be corrected for clarity purposes." The circuit court concluded the letter opinion by directing counsel for the Jensens to prepare orders effectuating the circuit court's rulings and to present them to the circuit court for entry.

On April 9, 2018, prior to the circuit court entering any orders related to its February 2, 2018 letter opinion, the Cooks filed a motion to reconsider. It does not appear from the record that the Cooks ever requested or received a ruling on the motion to reconsider.

On April 18, 2018, the circuit court entered two orders memorializing the rulings contained in the February 2, 2018 letter opinion. One order was an amended order of adoption. In it, the circuit court concluded that the prior order's reference to the stepparent adoption statute represented an "incorrect citation of the statutory authority" under which the circuit court had acted and that the "incorrect citation . . . had no impact as to the process or the investigation conducted by the Department of Social Services[.]" The order noted that the "incorrect citation . . . should be corrected for the sake of clarity in accordance with Code of Virginia Section 8.01-428[.]" Accordingly, unlike the prior order of adoption, the amended order does not reference Code § 63.2-1241, the stepparent adoption statute, but rather, references Code § 63.2-1242.1, the close relative adoption statute. Finally, the amended order provides that it "shall relate back to the entry of the original Final Order of adoption, *nunc pro tunc*, and the

- 6 -

child shall continue to be deemed adopted by [the Jensens] as of the entry of that previous order, August 22, 2017."

No objections are noted on the amended adoption order, and no party sought to appeal it. Accordingly, to the extent that the circuit court had jurisdiction to enter this order, the circuit court was divested of jurisdiction over the order on May 9, 2018, Rule 1:1, and the order became a final, non-appealable order when no notice of appeal was filed on or before May 18, 2018. Rule 5A:6.

The other April 18, 2018 order entered by the circuit court memorialized the circuit court's conclusion that neither the Cooks nor the child's GAL from the JDR court custody/visitation proceeding had standing to challenge the final order of adoption that had been entered on August 22, 2017. Accordingly, the order "dismissed for lack of standing" the motion to vacate that had been filed by the Cooks.

Both the Cooks and the child's GAL from the JDR court custody/visitation proceeding noted objections to this order; however, neither noted an appeal of the order. Accordingly, by operation of Rule 5A:6, the order, to the extent that the circuit court had authority to enter it, became a final, non-appealable order on May 18, 2018.

Despite their decision not to appeal either of the circuit court's April 18, 2018 orders, the Cooks on October 12, 2018—more than a year after entry of the initial adoption order—filed in the circuit court a petition to vacate the April 18, 2018 orders. They raised many of the same issues that had been raised at the January 26, 2018 hearing and advanced in detail arguments that the circuit court had lacked jurisdiction to enter the orders. The Cooks also argued that the circuit court erred in granting an adoption pursuant to Code § 63.2-1242.1 in favor of Mr. Jensen because Mr. Jensen

did not meet the statutory definition of "close relative" in effect at the time of the circuit court's order.[6]

The Jensens filed a motion to dismiss the Cooks' petition. The Jensens argued that *res judicata* barred the petition, particularly in that the circuit court already had ruled that the Cooks lacked standing. The Jensens, based on the six-month limitation imposed by Code § 63.2-1216, further contended that the petition was filed too late to be considered.

The circuit court addressed the Cooks' petition to vacate at a hearing on January 22, 2019. The circuit court first considered whether the petition was time-barred. The Cooks argued that Code § 63.2-1216 did not bar their petition because it was filed within six months of the amended adoption order, which they characterized as a new order because it was substantively different from the initial order. Despite its decision to enter the amended order *nunc pro tunc* to August 22, 2017, the circuit court stated that "I feel [the latest petition to vacate is] timely filed and it's appropriate for the [c]ourt to listen to it."

Regarding standing, the Cooks conceded that there was no statute establishing who can contest an adoption, but argued that the loss of their visitation rights constituted a harm that gave them a justiciable interest in the adoption proceedings. The Cooks then argued that their failure to appeal the prior orders and the doctrine of *res judicata* did not preclude consideration of their petition because, they stated, the previous motion was to address "statutory authority" while the new petition raised for the first time issues of subject matter jurisdiction, personal jurisdiction, and the

---

[6] At the time the circuit court entered its April 18, 2018 orders, Code § 63.2-1242.1(A) provided that "[f]or the purposes of this chapter, a 'close relative placement' shall be an adoption by the child's grandparent, great-grandparent, adult nephew or niece, adult brother or sister, adult uncle or aunt, or adult great uncle or great aunt." The statute was amended effective July 1, 2019, to expand the definition of a "close relative" to include "the child's grandparent, great-grandparent, adult nephew or niece, adult brother or sister, adult uncle or aunt, adult great uncle or great aunt, stepparent, adult stepbrother or stepsisters, *or other adult relatives of the child by marriage* or adoption." (Emphasis added).

best interests of the child. In addition, during the hearing, the Cooks, for the first time, alleged that there may have been extrinsic fraud in the Jensens' filing their petition for adoption and in procuring the final order. At the hearing, they questioned both Jensens as to whether they sought the adoption in order to eliminate visitation. Both Jensens denied seeking the adoption in order to terminate the Cooks' visitation. Mrs. Jensen cited facilitating the securing of services to meet the child's special needs as her motivation. Mr. Jensen testified, "We understood that legally that would sever, but that did not play so much into the adoption. In fact, being legally severed and being morally severed are two different things."

The circuit court issued a letter opinion on March 15, 2019. Despite stating at the hearing that the petition was timely, the court readdressed the issue in its opinion. The court stated that "the [a]mended [a]doption [o]rder was not a final order but instead was an amendment" and therefore concluded that "the six months' time period to challenge the adoption would have expired February 22, 2018." The circuit court nevertheless proceeded under the understanding that an order, if void, could be subject to attack at any time, but it noted that some of the arguments had been raised by the Cooks and rejected by the circuit court previously. The circuit court created a chart to determine which issues had been addressed in both petitions to vacate and concluded that, while "standing and compliance with the statutory requirements" had been raised in both petitions, the Cooks' arguments regarding "the best interests of the child and the allegation of extrinsic fraud" had not. The circuit court found that *res judicata* barred relitigation of the former, but that it could address the latter.

The circuit court entered its order denying the Cooks' petition to vacate the April 2018 orders on May 28, 2019. The court memorialized its ruling as follows:

> The issues of standing and statutory compliance were previously argued in a prior hearing and concluded and are *res judicata*; the issues of jurisdiction as a result of statutory construction is an issue that was either (a) previously determined and therefore *res judicata*

or (b) should have been asserted in the prior hearing and therefore precluded; the determination as to the best interests of the child was previously considered in the 2018 hearing; and the allegation of extrinsic fraud, based solely upon an unsubstantiated assertion by counsel without substantive proof, amounts to nothing more than a theory[.]

Based on these determinations, "and the [c]ourt having issued a detailed letter opinion regarding the matter on March 15, 2019[,]" the circuit court denied the Cooks' latest petition.

This appeal followed. The Cooks present three assignments of error. They first contend the circuit court erred in finding that they lacked standing. In their second assignment of error, they challenge both the circuit court's entry of the August 2017 order of adoption and its April 2018 amended adoption order; arguing three grounds for the alleged errors: 1) "the statutory requirements had not been met"; 2) "there was no factual basis for finding that the adoption was in the best interests of the child"; and 3) "the [circuit] court did not have jurisdiction to enter an adoption order." Lastly, the Cooks allege that the circuit court erred "when it found that there was no evidence of extrinsic fraud."

## ANALYSIS

### I. Standard of Review

Our resolution of this appeal is dictated by the operation of Rule 1:1 and Code § 63.2-1216. The interpretation and application of both the Rules of the Supreme Court and statutory provisions represent "questions of law[.]" Nelson v. Middlesex Dep't of Soc. Servs., 69 Va. App. 496, 508 (2018). We apply a *de novo* standard of review to such questions. Id.

### II. Rule 1:1 and Code § 63.2-1216

Both Rule 1:1 and Code § 63.2-1216 are limitations on a circuit court's ability to exercise jurisdiction it otherwise would possess. Rule 1:1 is applicable to all cases, while Code § 63.2-1216 applies only in adoption cases. A review of each and how they work in concert reveals that the circuit court lacked authority to revisit the substance of the August 22, 2017

- 10 -

order granting the Jensens' petition to adopt the child when it addressed the challenges raised by the Cooks.

## A. Rule 1:1

In pertinent part, Rule 1:1 provides that "[a]ll final judgments, orders, and decrees, irrespective of terms of court, shall remain under the control of the trial court and subject to be modified, vacated, or suspended for twenty-one days after the date of entry, and no longer." In short, Rule 1:1 divests a circuit court of jurisdiction over a case twenty-one days after the circuit court enters the final order.

"Although the finality imposed by Rule 1:1 generally governs, there are circumstances in which a trial court may exercise limited jurisdiction beyond the twenty-one-day period." Minor v. Commonwealth, 66 Va. App. 728, 740 (2016). For example, the bar of Rule 1:1 does not prevent a circuit court from revisiting an order after twenty-one days to correct a clerical error. Id.; see also Code § 8.01-428(B). Additionally, a circuit court may revisit a void judgment at any time, regardless of whether the prior judgment is void by reason of the circuit court lacking subject matter jurisdiction, the circuit court lacking jurisdiction over one of the parties, or the judgment having been procured by fraud. Nelson, 69 Va. App. at 509-10.

## B. Code § 63.2-1216

Code § 63.2-1216 provides that

> [a]fter the expiration of six months from the date of entry of any
> final order of adoption from which no appeal has been taken to the
> Court of Appeals, the validity thereof shall not be subject to attack
> in any proceedings, collateral or direct, for any reason, including
> but not limited to fraud, duress, failure to give any required notice,
> failure of any procedural requirement, or lack of jurisdiction over
> any person, and such order shall be final for all purposes.

The statute expresses the General Assembly's "policy choice to favor finality" in adoption cases, "recognizing that repeatedly subjecting a child to multiple changes in or even

- 11 -

mere challenges to who his legal parents are has the potential to cause significant harm to the child." Nelson, 69 Va. App. at 509. As we noted regarding an earlier incarnation of the statute, the General Assembly has concluded that the benefits of a "policy of stability in a family relationship, particularly when a young minor is involved, outweighs the possible loss to a person whose rights are cut off through fraud and ignorance." F.E. v. G.F.M., 35 Va. App. 648, 661 (2001) (*en banc*) (internal quotation marks and citations omitted).

Although the six-month period referenced in Code § 63.2-1216 is longer than Rule 1:1's twenty-one-day period, it does not represent an extension of a circuit court's jurisdiction in adoption cases. As we observed in Nelson,

> [p]roperly understood, Code § 63.2-1216 sets an outer boundary within which a party may bring a challenge based on . . . an exception to Rule 1:1's general rule. In the six months after the entry of an adoption order, a person with standing may challenge an adoption order more than twenty-one days after its entry for any of the grounds that would permit a challenge under Rule 1:1. After the six-month period has run, however, Code § 63.2-1216 prevents a person from challenging the adoption order even if one of the exceptions to Rule 1:1 is present. This remains true even if the exception is based upon "fraud, duress, failure to give any required notice, failure of any procedural requirement, or lack of jurisdiction over any person."

69 Va. App. at 510 (quoting Code § 63.2-1216).

### C. Application to August 22, 2017 Order

The time periods contained in both Rule 1:1 and Code § 63.2-1216 are both triggered by a circuit court's entry of a final order. "A final order is one which disposes of the whole subject, gives all the relief contemplated, provides with reasonable completeness for giving effect to the sentence, and leaves nothing to be done in the cause save to superintend ministerially the execution of the order." Daniels v. Truck & Equip. Corp., 205 Va. 579, 585 (1964) (internal quotation marks and citations omitted). Applying this standard, it is clear that the circuit court's August 22, 2017 order was, in fact, a final order.

- 12 -

The only matter before the circuit court when it entered the August 22, 2017 order was the Jensens' petition for adoption. The August 22, 2017 order, which the circuit court labeled the "FINAL ADOPTION ORDER[,]"[7] completely resolves that petition. It grants the petition for adoption, decreeing that the child "is henceforth, for all intents and purposes, the child of Gary S. Jensen and Jennifer D. Jensen and shall be entitled to all the rights and privileges, and subject to all the obligations, of a child of the" Jensens. Underscoring its intended finality, the order directed that "the papers in this matter be placed in the closed files" of the circuit court. In short, there is no legitimate doubt that, when entered, the August 22, 2017 order was a final order.

Because the August 22, 2017 order was a final order, the circuit court retained jurisdiction over the matter until September 12, 2017. Rule 1:1. No one challenged the order in that time frame, and the circuit court did not suspend, modify, or vacate the order in the twenty-one-day period. Accordingly, absent one of the recognized exceptions to the finality imposed by Rule 1:1, the circuit court lost jurisdiction over the matter on September 12, 2017, and lost with it the authority to enter any further substantive orders related to the adoption.

Nearly two months after Rule 1:1's twenty-one-day period had run, the Cooks filed their first pleading challenging the adoption—their November 9, 2017 motion to vacate. Although the Cooks' challenge was brought within Code § 63.2-1216's six-month period, that is only part of the equation. For the circuit court to have had authority to rule on the Cooks' challenge, it had to be predicated on one of the recognized exceptions to Rule 1:1. See Nelson, 69 Va. App. at 510 (holding that "[i]n the six months after the entry of an adoption order, a person with standing

---

[7] Although the circuit court's characterization of the order as final is not dispositive, it certainly suggests that, as far as the circuit court was concerned, nothing remained to be done.

may challenge an adoption order more than twenty-one days after its entry for any of the grounds that would permit a challenge under Rule 1:1").

From the record before us, we cannot conclude that such a ground was asserted by the Cooks in their initial challenge to the adoption order. As noted above, we lack a transcript of the hearing at which the Cooks pressed their initial challenge. Accordingly, we are unaware of the specific arguments they made, the evidence/testimony that was adduced, and any arguments that they may have made, but waived or abandoned.

The limited picture of the relevant hearing that the record does provide does not suggest that the Cooks asserted a viable basis for evading the bar of Rule 1:1 in their initial challenge. The circuit court's January 26, 2018 order, which was endorsed without objection by the Cooks, lists three issues as being before the circuit court. None of them facially appears to constitute an exception to Rule 1:1.[8] Furthermore, when asked at oral argument in this Court to identify an argument advanced in the initial challenge that constituted an exception to Rule 1:1's finality, the

---

[8] The circuit court did invoke an exception to Rule 1:1 in issuing the amended order of adoption on April 18, 2018. The circuit court asserted that the reference in the initial order to the stepparent adoption statute was a clerical error subject to correction pursuant to Code § 8.01-428, a recognized exception to the finality imposed by Rule 1:1. The Cooks argue that changing the statutory reference in the order from the stepparent adoption statute, which had been pled in the petition for adoption, to the close relative adoption statute represented a substantive change to the order that could not be corrected as a clerical error pursuant to Code § 8.01-428. We need not resolve this question because it does not affect the resolution of the appeal. If the Cooks are correct and the amendment reflected a substantive change that could not be accomplished pursuant to Code § 8.01-428, the circuit court was without jurisdiction to enter the amended order, leaving the August 22, 2017 order as the order from which both the Rule 1:1 and Code § 63.2-1216 deadlines run. If the circuit court's change was the permissible correction of a clerical error, the August 22, 2017 order remains the order from which the relevant deadlines run because the correction would necessarily represent a change effectuated *nunc pro tunc*. See Minor, 66 Va. App. at 741-42 (holding that an order entered to correct a clerical error pursuant to Code § 8.01-428 is deemed to have been entered as of the date of the original order because correcting the error does "not vest [a circuit] court with jurisdiction to do anything else regarding the case").

Cooks largely conceded that they had not raised one, noting that the thrust of their initial challenge was that the circuit court had "misapplied" the adoption statutes.[9]

Such an argument goes to whether the circuit court committed error in granting the adoption in August 2017, not whether it lacked jurisdiction to act at that time. As the Supreme Court has explained, "[t]he validity of a judgment based upon a challenge to the application of a statute raises a question of trial error, and not a question of jurisdiction." Parrish v. Jessee, 250 Va. 514, 521 (1995) (citing Pflaster v. Town of Berryville, 157 Va. 859, 864 (1931)); see also Hicks ex rel. Hicks v. Mellis, 275 Va. 213, 219 (2008). A circuit court's misapplication of statutes renders its judgment voidable and subject to appeal; it does not render it void. Parrish, 250 Va. at 521. Thus, even assuming that the circuit court erred in its application of the adoption statutes,[10] the argument advanced by the Cooks in their initial challenge to the adoption order did not fall within the exceptions to the finality provisions of Rule 1:1. Accordingly, the circuit court was without authority to entertain that challenge, rendering the circuit court's April 18, 2018 order dismissing the Cooks' petition for lack of standing a nullity.

Our conclusions that the circuit court lacked authority to substantively alter the initial adoption order when it considered the Cooks' initial challenge and that the August 22, 2017 adoption order constitutes the final order resolve the remaining issues.[11] Although the Cooks

---

[9] On occasion, the Cooks have labeled this argument as one of "jurisdiction"; however, they did not challenge the circuit court's subject matter jurisdiction and, as we explain, the argument they made does not raise a jurisdictional issue.

[10] At oral argument in this Court, the Jensens, with credible candor, conceded that the circuit court had erred in that they did not qualify as stepparents for an adoption pursuant to Code § 63.2-1241 and that Mr. Jensen was not a close relative for the purposes of adoption pursuant to Code § 63.2-1241.1 as it existed when the circuit court acted.

[11] In addition to resolving the Cooks' second challenge to the adoption, these conclusions obviate the need for us to address the effect, if any, of the Cooks' failure to timely appeal the circuit court's orders entered on April 18, 2018.

eventually did challenge the circuit court's subject matter jurisdiction, they did not do so until October 12, 2018, when they filed their second challenge to the adoption, seeking to vacate the circuit court's April 18, 2018 orders. Because this challenge was filed more than a year after the adoption was completed by entry of the August 22, 2017 order, Code § 63.2-1216 precluded the circuit court from considering the arguments raised in the Cooks' second challenge, rendering the circuit court's May 28, 2019 order a nullity. As a result, we cannot address the substance of their arguments.

Our determination that the law does not afford the Cooks the remedies they seek should not in any way be taken as a criticism of the Cooks' motives. We have no reason to doubt that they are motivated by what they believe is in the best interests of their biological grandchild and understand their frustration with the process that led to this point. However, in enacting Code § 63.2-1216, the General Assembly made clear that the need for finality and stability in adoption proceedings dictates that we affirm the adoption order in this case. See F.E., 35 Va. App. at 661 (recognizing the General Assembly's policy choice that "stability in a family relationship, particularly when a young minor is involved, outweighs the possible loss to a person whose rights are cut off through fraud and ignorance" (internal quotation marks and citations omitted)). Consistent with that policy choice, the circuit court's judgment granting the adoption of the child must be affirmed.

## CONCLUSION

For the foregoing reasons, the judgment of the circuit court is affirmed.

Affirmed.

- 16 -